UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

MICHAEL CARROLL and,
MICHAEL PAPPAGALLO

Defendants.

No. 19-cr-545 (CM)

November 8, 2019

**MEMORANDUM IN SUPPORT OF MICHAEL PAPPAGALLO'S
MOTION FOR EARLY RETURN OF RULE 17(c) SUBPOENAS**

## TABLE OF CONTENTS

I. BACKGROUND ..................................................................................................................1

II. DISCUSSION ....................................................................................................................4

    A. Legal Standard .......................................................................................................4
    B. The Proposed Subpoenas Satisfy the Nixon Standard For Early Return .................7

III. CONCLUSION ..................................................................................................................9

# **TABLE OF AUTHORITIES**

**Cases**

*Bowman Dairy Co. v. United States*,
   341 U.S. 214 (1951)..................................................................................................................6

*SEC v. Block*,
   Complaint, No. 16-cv-7003 (S.D.N.Y. Sept. 8, 2016), ECF No. 1 ..........................................2

*United States v. Binday*,
   2013 WL 4494659 (S.D.N.Y. Aug. 15, 2013)...........................................................................5

*United States v. Nachamie*,
   91 F. Supp. 2d 552 (S.D.N.Y. 2000).....................................................................................5, 6

*United States v. Nixon*,
   418 U.S. 683 .........................................................................................................................4, 5

*United States v. Nosal*,
   291 F.R.D. 403 (N.D. Cal. 2013)..............................................................................................6

*United States v. Rajaratnam*,
   753 F. Supp. 2d 317 (S.D.N.Y. 2011).......................................................................................6

*United States v. Stein*,
   488 F. Supp. 2d 350 (S.D.N.Y. 2007).......................................................................................5

*United States v. Tucker*,
   249 F.R.D. 58 (S.D.N.Y. 2008) ................................................................................................5

**Other Authorities**

Fed. R. Crim. P. 16(a)(1)(E) ............................................................................................................6

Fed. R. Crim. P. 17(c) .....................................................................................................................4

U.S. Const., amend. VI ...................................................................................................................4

Pursuant to Federal Rule of Criminal Procedure 17 ("Rule 17"), Defendant Michael Pappagallo, by and through undersigned counsel, respectfully requests the issuance of Rule 17(c) subpoenas directed to (1) Brixmor Property Group Inc. ("Brixmor" or the "Company"), (2) Marks Paneth LLP ("Marks Paneth"), (3) Alvarez & Marsal ("A&M"), and (4) PricewaterhouseCoopers LLP ("PwC"), to produce documents described in the subpoena riders attached as Exhibits A-D (the "Proposed Subpoenas").

I.   BACKGROUND

On July 30, 2019, Defendant Michael Pappagallo, the former President and Chief Financial Officer of Brixmor, a real estate investment trust ("REIT") with over $9 billion in assets, was charged in a six-count indictment with conspiracy to commit securities fraud and to make false filings with the SEC, securities fraud, false statements in filings with the SEC, and false certifications filed with the SEC. *See* Indictment (ECF No. 2). Although he is not alleged to have profited (or even stood to profit) in any way from the alleged misconduct, the government accuses Mr. Pappagallo and others of causing Brixmor to make financial misstatements, from the third quarter of 2013 through the third quarter of 2015, regarding Same Store Net Operating Income ("SSNOI" or "SPNOI"), a non-GAAP measure for which there is no accepted standard regarding calculation methods. The Indictment also alleges that Mr. Pappagallo and others at Brixmor improperly accounted for lease settlement income and improperly adjusted the "pool" of properties that would be included in the SSNOI calculation.

The government contends that Mr. Pappagallo and his purported co-conspirators made certain alleged accounting adjustments, which were misstated by 1.5% or less, in order to "smooth" potential ups and downs in one single performance metric – SSNOI – from quarter to quarter. SSNOI is not a metric that analysts use to value the company, but is simply one of several dozen

metrics that the Company included in its quarterly and annual financial statements. Indeed, as the Securities and Exchange Commission alleged in *SEC v. Block*, Complaint at 2, No. 16-cv-7003 (S.D.N.Y. Sept. 8, 2016), ECF No. 1, other non-GAAP metrics such as funds from operations and adjusted funds from operations – not SSNOI – are "the most useful indicator[s] of [a] REIT's ongoing performance." The government's theory of the case is thus that President and CFO Pappagallo was culpably involved in small-dollar accounting adjustments, which were within the domain of the accounting department in Brixmor's satellite office in Conshohocken, Pennsylvania, with the intent to slightly affect one non-GAAP metric from which he could not possibly profit.

Moreover, internal investigations by the Company, as well as by several independent, outside auditing firms, have consistently concluded that the alleged accounting adjustments had an inconsequential effect on Brixmor's financials. After an in-depth internal review, the Company did not issue a restatement of its consolidated financial statements for the periods in which the alleged errors took place.

Mr. Pappagallo cannot feasibly defend against the government's proposed accounting adjustments if he does not have detailed, narrative work papers outlining how and why the government believes the original reported SSNOI figures were wrong and the government's alleged "actual" numbers are correct. In fact, despite these being the "government's corrections," the government did not actually make the corrections in question. Rather, it effectively contracted out its investigation into Brixmor to a series of auditing and accounting companies (which themselves were inconsistent), and then cribbed their notes to assemble the Indictment. In brief, the government derived its information from a five-week investigation conducted by Sullivan & Cromwell and a modest follow-up by the SEC. In this process, the government appears to have failed to collect patently relevant information to which it readily had access, including, *inter alia*,

memoranda and other work papers that detail why the relevant accounting entries are purportedly erroneous or fraudulent. Instead, the government circumscribed its investigation from the start. Instead of collecting and reviewing the full record, including email communications addressing the accounting entries, the government gathered only documents responsive to specific searches that were likely to produce only the type of evidence that would fit its theory of liability, devoid of context. The primary purpose of the Proposed Subpoenas is to fill in these glaring gaps.

At a status conference on November 5, 2019, the government restated its contention that all the necessary information about the accounting adjustments is included in the documents it has already produced. In fact, those previous productions have been document dumps consisting of tens of thousands of files, many of which are Excel spreadsheets containing dozens of worksheets, each with hundreds of rows. The government represents that these files should contain sufficient explanation of the allegedly fraudulent accounting entries, but, in reality, these documents provide remarkably little information concerning what is believed to be incorrect, let alone fraudulent, about Brixmor's original accounting entries. The documents requested in the enclosed subpoenas will provide information critical to the defense regarding the process and conclusions of the numerous accounting audits from which the government has assembled the Indictment.

Unfortunately, the discovery produced by the government, which the government has represented constitutes "all documents obtained by the government and the SEC from third parties in their respective investigations," confirms the failure to gather important evidence highly relevant to materiality and *mens rea*. The government chose to gather and review only those emails that hit on select, one-sided search terms requested by the SEC like "cookie jar," "smooth earnings," and "meet guidance." *See* S.D.N.Y. Letter, Sept. 27, 2019, at Appendix A. The use of curated search terms is all but guaranteed to miss exculpatory emails. Indeed, the

3

government's list of search terms did not even cover all the topics in the Indictment, let alone yield any search results that could provide potentially exculpatory context for the alleged accounting adjustments.

## II. DISCUSSION

Mr. Pappagallo now seeks early return of subpoenas pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure to obtain critical documents from Brixmor and its internal auditor, as well as two of the accounting firms that were hired by Brixmor's Board of Directors to investigate the alleged accounting irregularities. Mr. Pappagallo requests subpoenas with a return date of December 6, 2019. The Proposed Subpoenas are narrowly tailored to capture only responsive, admissible evidence. Furthermore, because the documents requested include detailed accounting work papers and the email communication correspondence relating to the alleged accounting adjustments, early return is necessary to allow Mr. Pappagallo sufficient time to process and analyze the documents so that they may be used in his defense at trial.

### A. Legal Standard

The Sixth Amendment guarantees that "the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor." U.S. CONST. amend. VI. Rule 17(c) implements that guarantee, permitting a party to request the production in advance of trial of, among other things, "books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1). *See also United States v. Nixon*, 418 U.S. 683, 698-99, 711 (observing that the "chief innovation [of Rule 17(c)] was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials").

Under Rule 17(c), a party seeking the pre-trial production of documents must demonstrate: "(1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable

reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general fishing expedition." *Nixon*, 418 U.S. at 699-700 (footnote omitted) (internal quotation marks omitted). *See also United States v. Stein*, 488 F. Supp. 2d 350, 366 (S.D.N.Y. 2007) ("The text of Rule 17(c) alone strongly suggests the conclusion that the subpoena should be enforced unless compliance would be unreasonable or oppressive."); *United States v. Nachamie*, 91 F. Supp. 2d 552, 562 (S.D.N.Y. 2000) ("The text of Rule 17(c) provides that '[t]he court on motion made promptly may quash or modify the subpoena if compliance would be unreasonable or oppressive.' Fed. R. Cr. P. 17(c). The Rule itself provides no other basis to quash a subpoena."). Courts permit Rule 17 subpoenas when the requests are "reasonably targeted to ensure the production of material evidence." *United States v. Tucker*, 249 F.R.D. 58, 66 (S.D.N.Y. 2008). As explained in detail below, the subpoenas sought here plainly meet the *Nixon* standard.

Moreover, as several courts in this circuit have recognized, there is a "real question . . . as to whether it makes sense to require a defendant's use of Rule 17(c) to obtain material from a non-party to meet" the *Nixon* standard. *Nachamie*, 91 F. Supp. 2d at 562. Although we recognize that this Court has applied *Nixon* in this context, *see United States v. Binday,* 2013 WL 4494659, at *1 (S.D.N.Y. Aug. 15, 2013), and we believe the requested subpoenas easily meet the *Nixon* standard, we respectfully preserve for appeal the argument that *Nixon* is not the correct standard for evaluating subpoenas served by a defendant. *See Stein*, 488 F. Supp. 2d at 365 (declining to apply *Nixon* to quash a defendant's subpoena). Instead, the proper standard is whether a subpoena is "(1) reasonable, construed using the general discovery notion of material to the defense; and

(2) not unduly oppressive for the producing party to respond." *Nachamie*, 91 F. Supp. 2d at 563 (internal quotation marks omitted); *see also United States v. Nosal*, 291 F.R.D. 403, 409 (N.D. Cal. 2013) (applying *Nachamie* standard in assessing defendant's Rule 17(c) subpoena to third party).

This more lenient threshold for Rule 17 subpoenas served by defendants on third parties carries out the Rule's "purpose of establishing *a more liberal policy* for the production, inspection and use of materials at the trial," since Rule 17 was not intended "to exclude from the reach of process of the defendant any material that . . . could be used at the trial." *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 320 n.1 (S.D.N.Y. 2011) (internal quotation marks omitted) (quoting *Bowman Dairy Co. v. United States*, 341 U.S. 214, 221 (1951)). "It is extraordinarily difficult for a defendant, who has limited ability to investigate, to know enough about the discovery he is seeking such that he can comply with the *Nixon* requirements." *Id.* (citation omitted). Applying a "materiality standard" would ensure "that the defendant has a right to obtain evidentiary material from a third party that is no broader—but also no narrower—than the defendant's right to obtain such material from the government" and "would resolve that puzzle at great benefit to the rights of defendants to compulsory process and at little cost to the enforcement of the criminal law, since Rule 17(c) permits the government to issue subpoenas as well." *Id.* (citing Fed. R. Crim. P. 16(a)(1)(E)); *see also id.* (noting that "it remains ironic that a defendant in a breach of contract case can call on the power of the courts to compel third-parties to produce any documents 'reasonably calculated to lead to the discovery of admissible evidence,' Fed. R. Civ. P. 26(b)(1), while a defendant on trial for his life or liberty does not even have the right to obtain documents 'material to his defense' from those same third-parties").

B. <u>The Proposed Subpoenas Satisfy the *Nixon* Standard For Early Return</u>

Mr. Pappagallo requests documents in two categories: from Brixmor and from the accounting firms involved in investigating the accounting entries at issue. From Brixmor, Mr. Pappagallo requests emails of the government's cooperating witnesses Steven Splain and Michael Mortimer, as well as emails between and among a subset of Brixmor employees relating to the specific accounting entries at issue: lease settlement income, the 2617 account and related sub-accounts, the CAM project, an insurance refund received in 2015, and the accounting for tenant credits, security deposit reconciliations, unvouched or stale purchase orders, and the item identified as "Offset 2617.RET." Additionally, Mr. Pappagallo requests documents reflecting the internal control procedures concerning the 2617 and lease settlement income accounts, documents relied upon by the Brixmor Board of Directors as they decided to request the resignation of Mr. Pappagallo and others, and internal documents that include the Company's definition of SSNOI. Next, Mr. Pappagallo requests the notes created by Stacy Slater, Senior Vice President, Investor Relations and Capital Markets, relating to her discussions at meetings with analysts and investors. Finally, Mr. Pappagallo requests the quarterly compliance certificates signed by certain personnel in connection with the Company's 10-Q and/or 10-K filings and quarterly supplemental reporting packages. All requests from Brixmor include finite date ranges, tailored specifically to yield only relevant evidence.

Mr. Pappagallo also requests narrative summaries and work papers from three of the accounting firms that were involved in investigating accounting entries at issue.

The Proposed Subpoenas satisfy the four *Nixon* factors. *First*, the subpoenas seek only documents that are relevant and admissible. From Brixmor, Mr. Pappagallo seeks communications regarding the topics that are central to the accounting adjustment allegations in the Indictment.

7

These documents will be relevant to establishing the context of the accounting entries the government alleges are erroneous and will provide exculpatory details in that these communications may demonstrate the legitimate and considered accounting judgment that went into certain accounting decisions, and the lack of any intent to defraud on the part of Mr. Pappagallo. Emails from government cooperating witnesses Splain and Mortimer from prior to Mr. Pappagallo's tenure with Brixmor will demonstrate that many of the accounting practices alleged to be fraudulent existed long before Mr. Pappagallo's arrival. Additionally, Mr. Pappagallo requests notes from meetings of the Board of Directors, and notes from meetings with analysts and investors. All Brixmor emails and notes will be admissible as business records kept in the ordinary course of business.

From Marks Paneth, A&M, and PwC, Mr. Pappagallo seeks work papers and accounting narratives detailing the government's accounting adjustments. These will be relevant as evidence of the fact that certain of Brixmor's accounting decisions at issue may have been reasonable and made according to generally accepted practice in the shopping center REIT industry. Further, because the auditors' accounting work product was used by the Company in its decision to not restate its financials to the investing public, these documents will serve as evidence of the immaterial nature of the alleged "errors."

*Second*, the requested documents are not procurable reasonably in advance of trial by exercise of due diligence, as only Brixmor, Marks Paneth, A&M, and PwC have access to the requested documents.

*Third*, Mr. Pappagallo cannot properly prepare for trial without the pre-trial production and inspection of the requested documents, and failure to inspect the documents prior to trial may delay the trial. The requested accounting work papers will require significant and time-consuming

processing and analysis by expert accountants and experts in the REIT space, and could not reasonably be used by the defense unless produced prior to trial.

*Finally*, this request is made in good faith and is not a fishing expedition. Based on prior witness testimony and statements, it is likely that Brixmor, Marks Paneth, A&M, and PwC will have documents responsive to many or all the proposed requests, and that those documents will be relevant and admissible at trial.

### III.     CONCLUSION

For the foregoing reasons, Mr. Pappagallo respectfully submits that the Court should issue the Proposed Subpoenas pursuant to Rule 17(c) to Brixmor, Marks Paneth, A&M, and PwC.

Respectfully submitted,

GREENBERG TRAURIG, LLP

By:   /s/ Gregory W. Kehoe
Gregory W. Kehoe
Daniel P. Filor
Robert A. Horowitz
200 Park Avenue
New York, NY 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
*Attorneys for Defendant Michael Pappagallo*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>v. )<br>MICHAEL CARROLL and )<br>MICHAEL PAPPAGALLO, )<br>        Defendants. )<br>)<br>)<br>)<br>)<br>) | No. 19-cr-545 (CM)<br><br>Judge Colleen McMahon |

**[PROPOSED] ORDER**

Defendant Michael Pappagallo's Motion for Early Return of a Rule 17(c) Subpoena and accompanying memorandum of law, and Index of Exhibits, in support thereof is hereby GRANTED.

Moreover, the Court ORDERS (1) Brixmor Property Group Inc., (2) Marks Paneth LLP, (3) Alvarez and Marsal, and (4) PricewaterhouseCoopers LLP to file any motion to quash Defendant's subpoena no later than November 20, 2019 and/or produce documents responsive to the subpoenas by December 6, 2019.

**SO ORDERED.**

Dated: New York, New York
       _____, 2019

                                                        Colleen McMahon
                                                        Chief United States District Judge