UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x

UNITED STATES OF AMERICA,                    :

                                             :

            -v.-                             :        19 Cr. 545 (CM)

                                             :

MICHAEL CARROLL and                          :

MICHAEL PAPPAGALLO,                          :

                                             :

            Defendants.                      :

---------------------------------------------------------------------x


### REPLY MEMORANDUM OF LAW IN SUPPORT OF BRIXMOR'S MOTION TO QUASH CERTAIN REQUESTS IN DEFENDANTS' RULE 17 SUBPOENAS

HOGAN LOVELLS US LLP

Robert B. Buehler

390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3261
Fax:  (212) 918-3100

Douglas A. Fellman

555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5714
Fax: (202) 637-5910
(*Pro Hac Vice* Motion Pending)

*Attorneys for non-party witness
Brixmor Property Group, Inc.*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ............................................................................................................................1

    I.      The *Nixon* standard applies to Defendants' Rule 17(c) subpoena requests ............1

    II.    Defendants fail to carry their burden of demonstrating that the requests
          meet the *Nixon* standard ..................................................................................2

          A.    Carroll's opposition demonstrates that his request does
               not meet *Nixon*'s requirements of relevance, specificity,
               and admissibility ............................................................................3

          B.    Pappagallo's opposition underscores the defects in
               his outstanding requests ..................................................................4

    III.   The proposed search terms do not cure the requests' deficiencies ........................6

          A.    Carroll's proposed modifications increase the burden
               on the Company ..............................................................................6

          B.    Pappagallo's proposed modifications remain deficient
               under *Nixon* ..................................................................................8

CONCLUSION ........................................................................................................................10

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*United States v. Barnes*,
2008 WL 9359654 (S.D.N.Y. Apr. 2, 2008) .........................................................................2

*United States v. Bergstein*,
2017 WL 6887596 (S.D.N.Y. Dec. 28, 2017) .......................................................................2

*United States v. Bergstein*,
2018 WL 9539856 (S.D.N.Y. Jan. 22, 2018) .......................................................................4

*United States v. Binday*,
2013 WL 4494659 (S.D.N.Y. Aug. 15, 2013) ......................................................................2

*United States v. Burger*,
773 F.Supp. 1419 (D. Kan. 1991) .........................................................................................5

*United States v. Carton*,
2018 WL 5818107 (S.D.N.Y. Oct. 19, 2018) .......................................................................1

*United States v. Ceballo*,
2003 WL 21961123 (S.D.N.Y. Aug. 18, 2003) ....................................................................3

*United States v. Jabar*,
2016 WL 8671207 (W.D.N.Y. July 22, 2016).......................................................................3

*United States v. Nixon*,
418 U.S. 683 (1974) .......................................................................................................*passim*

*United States v. Sawinski*,
2000 WL 1702032 (S.D.N.Y. Nov. 14, 2000) ......................................................................5

*United States v. Skelos*,
2018 WL 2254538 (S.D.N.Y. May 17, 2018) .......................................................................2

*United States v. Tucker*,
249 F.R.D. 58 (S.D.N.Y. 2008) ............................................................................................2

*United States v. Weisberg*,
2011 WL 1327689 (E.D.N.Y. Apr. 5, 2011) .....................................................................4, 5

**Other Authorities**

Federal Rule of Criminal Procedure 17(c) ......................................................................*passim*

Brixmor respectfully submits this reply memorandum of law in further support of its motion to quash certain requests in the Rule 17(c) subpoenas served by defendants Michael Carroll and Michael Pappagallo.

## PRELIMINARY STATEMENT

Brixmor recognizes that Carroll and Pappagallo are defendants in a criminal case and that they have an understandable desire to defend themselves in any way possible. Nonetheless, Rule 17(c) recognizes countervailing interests, places appropriate limitations on document requests, and accordingly does not authorize defendants to subpoena third parties for evidence that is not specifically identified, relevant, and admissible. *United States v. Nixon*, 418 U.S. 683, 699–700 (1974). This is especially true where, as here, the evidence sought is voluminous.

Carroll and Pappagallo are unable to establish that the three Objectionable Requests satisfy any, let alone all, of the *Nixon* requirements. Instead, rather than meaningfully engage with the *Nixon* standard, the defendants spend much of their oppositions discussing alleged deficiencies with the government investigation and why their criticism of the government should persuade the Court to allow them to fish through hundreds of thousands of communications in Brixmor's possession. Significantly, neither Carroll nor Pappagallo even attempt to distinguish their requests from the similarly broad requests quashed by this Court in *United States v. Carton*, 2018 WL 5818107 (S.D.N.Y. Oct. 19, 2018).

For the reasons stated herein and in Brixmor's opening brief, the Court should quash Carroll Request 1, Pappagallo Request 1, and Pappagallo Request 2, in their entirety.

## ARGUMENT

**I.    The *Nixon* standard applies to Defendants' Rule 17(c) subpoena requests**

Both defendants begin by arguing that the *Nixon* standard should not apply. And while their reasons for doing so are clear—their requests plainly must be quashed under *Nixon*—their

arguments are without merit. Courts in this District are virtually unanimous that the *Nixon* standard applies when considering a motion to quash a Rule 17(c) subpoena issued to a third party. *United States v. Skelos*, 2018 WL 2254538, at *1 (S.D.N.Y. May 17, 2018) (collecting cases). In the lone exception, former Judge Shira Scheindlin declined to apply the *Nixon* standard in *United States v. Tucker*, 249 F.R.D. 58 (S.D.N.Y. 2008). However, courts have uniformly declined to follow *Tucker* because "it is not the prevailing law" in this Circuit, *United States v. Barnes*, 2008 WL 9359654, at *3 (S.D.N.Y. Apr. 2, 2008), and because the exception it purported to carve out for subpoenas to third parties is inconsistent with controlling Supreme Court precedent. *See id.* ("Though the *Tucker* Court found [a] relaxed standard appropriate, it is not the prevailing law. Indeed, all district courts within the Second Circuit, aside from the *Tucker* court, have applied the *Nixon* analysis to third-party subpoenas issued by the defense."); *see also United States v. Bergstein*, 2017 WL 6887596, at *4 (S.D.N.Y. Dec. 28, 2017).

Consistent with its prior practice and that of the "overwhelming majority" of courts in this Circuit, this Court should apply the *Nixon* standard to Brixmor's motion to quash the Objectionable Requests from defendants' Rule 17(c) subpoenas. *See United States v. Binday*, 2013 WL 4494659, at *1 (S.D.N.Y. Aug. 15, 2013).

## II.   Defendants fail to carry their burden of demonstrating that the requests meet the *Nixon* standard

Defendants have the burden of demonstrating that the subpoenaed materials satisfy *Nixon*'s requirements. *See United States v. Ceballo*, 2003 WL 21961123, at *1 (S.D.N.Y. Aug. 18, 2003). After the party moving to quash challenges the subpoena's compliance with Rule 17(c), the defendant who sought the subpoena must rebut that claim and show how the subpoenaed materials satisfy the requirements. *See United States v. Jabar*, 2016 WL 8671207, at *2 (W.D.N.Y. July 22, 2016) (citing *United States v. Weissman*, 2002 WL 31875410, at *1

(S.D.N.Y. Dec. 26, 2002)).   Because defendants have failed to carry their burden, the Objectionable Requests must be quashed in their entirety.

### A.     Carroll's opposition demonstrates that his request does not meet *Nixon*'s requirements of relevance, specificity, and admissibility

First, in an effort to avoid the inescapable conclusion that Carroll Request 1 seeks large amounts of irrelevant material, Carroll contends that all of the approximately 450,000 e-mails responsive to the request—namely, the entire contents of his e-mail account for a five-year period—are a "prime source of evidence on *mens rea*" because "they will show what Mr. Carroll was doing and saying, the information he was receiving, and the extent to which he was relying on others on key issues in the case." Carroll Opp. Br., at 1. While clever, this conclusory proffer will not suffice.  Carroll cannot in good faith claim that *all* 450,000 e-mails in his account are somehow relevant to the present case.  His remarkably circular reasoning has the effect of making literally every e-mail in his account relevant, no matter the subject, the date, or the other parties to it, merely because those e-mails will show what he "was doing and saying." Carroll is wrong.  The Company has already produced the e-mails that touch on the "key issues in the case," rendering the remaining e-mails either privileged or irrelevant.

Second, Carroll's assertion that his request for 450,000 e-mails meets *Nixon*'s specificity and admissibility requirements is specious.  Carroll contends that the request "seeks a discrete and specific set of communications from a critical time frame . . . [and] [t]he communications sought are readily identifiable and available documents, *i.e.*, the emails Mr. Carroll sent and received . . . [over] a finite date range, from January 1, 2011 through the end of Mr. Carroll's employment at Brixmor, February 7, 2016." Carroll Opp. Br., at 12–13.  However, just because a group of documents is identifiable and available in the general sense does not mean that such a request satisfies *Nixon*'s requirements of specificity or admissibility.  If a request for each and

3

every one of the 450,000 e-mails in Carroll's account over a five-year period is sufficiently specific under *Nixon*, the specificity requirement would be rendered meaningless. Carroll's theory for specificity also stands in stark contrast with the abundance of cases that hold that such requests for "any and all documents" lack specificity and should be quashed. *See, e.g.*, *United States v. Bergstein*, 2018 WL 9539856, at *1 (S.D.N.Y. Jan. 22, 2018) (quashing a request for "[a]ll e-mails or other communications [ ] authored . . . or received" by two non-party witnesses).

One of the few cases cited by Carroll in support of his argument, *United States v. Weisberg*, 2011 WL 1327689 (E.D.N.Y. Apr. 5, 2011), actually undercuts his claim and demonstrates why the request should be quashed. The defendant in *Weisberg* sought, *inter alia*, billing records, time entries, invoices, and related records drafted by specific people, for work performed by specific individuals, and as limited by a specific time period. *Id*. at *6. The specificity of those requests allowed the court to determine that those documents would be relevant to the defense and would likely be admissible as business records. *Id*. at *7. Here, in stark contrast, Carroll seeks more than 450,000 e-mails, without any regard to their subject matter or other identifying information, which does not allow this Court to assess admissibility. Indeed, Carroll's request is much more like, and arguably broader than, the subpoena request in *Weisberg* that the court did quash, which sought all documents related to an escrow account from which the defendant was accused of stealing. *See id*. at *1–2, 6. Carroll's feeble attempts to satisfy the *Nixon* criteria ultimately demonstrate why Carroll Request 1 should be quashed.

**B.     Pappagallo's opposition underscores the defects in his outstanding requests**

Pappagallo similarly fails to meet his burden, as he largely ignores the *Nixon* requirements in his opposition brief. For example, Pappagallo never even addresses *Nixon*'s requirement of admissibility. It is important to note that under *Nixon*, the materials sought

"cannot be potentially relevant or admissible, they must meet the test of relevancy and admissibility at the time they are sought." *United States v. Burger*, 773 F.Supp. 1419, 1425 (D. Kan. 1991) (citing *United States v. Marchisio*, 344 F.2d 653, 669 (2d Cir. 1965)). The Court should quash Pappagallo's requests on this basis alone.

Pappagallo also fails to show how *Nixon*'s specificity and relevance requirements are met. To the contrary, Pappagallo's opposition concedes that he is not even seeking specifically identified documents that are admissible at trial. Rather, he desires to search through large volumes of communications with the "[hope] that something useful will turn up." *United States v. Sawinski*, 2000 WL 1702032, at *2 (S.D.N.Y. Nov. 14, 2000). For example, with respect to Request 1, Pappagallo explains that he would like Brixmor to produce all communications in Splain and Mortimer's e-mail accounts from January 1, 2012, to May 19, 2013, because he:

> could not know what Mr. Splain and Mr. Mortimer may have been doing before [Pappagallo] joined Brixmor, whether on the large projects that appear in the Government's discovery identified above, or on accounting treatments for other topics.

Pappagallo Opp. Br., at 13. This type of request, in which a defendant is blindly seeking a large trove of undifferentiated material, is squarely outside the permissible scope of Rule 17(c). Pappagallo cannot use a Rule 17(c) subpoena to engineer the kind of large-scale document production that might be permissible in civil discovery. Simply seeking the entire e-mail accounts of two potential government witnesses, for a sixteen-month period, just to see what they "may have been doing" is not allowed by Rule 17(c). Instead, Pappagallo must identify specific, relevant, and admissible information before he is entitled to production under Rule 17(c). Because he has not done so, his requests must be quashed.

**III.    The proposed search terms do not cure the requests' deficiencies**

Defendants' proposed attempts to narrow the Objectionable Requests fail to satisfy any prong of the *Nixon* standard and do not actually narrow any of the requests at all.  The requests would still result in the inevitable production of massive amounts of documents that have no discernable relevance to the case.  Defendants take umbrage at the term "fishing expedition;" however, it is difficult to come up with a more accurate characterization for these requests. Rather than narrowing the burden on the Company, the defendants' proposed broad searches leave Brixmor with two unsatisfactory choices: 1) comply with the improper requests as written and produce thousands of irrelevant and potentially sensitive documents at a large expense to the Company; or 2) expend even more time, resources, and money to assist the defendants in fishing through hundreds of thousands of Brixmor's documents.   As originally drafted, the Objectionable Requests do not meet the *Nixon* standards.  After failing to carry their burden under *Nixon*, the defendants cannot then enlist Brixmor's time and resources to search for unspecified and irrelevant materials in an attempt to salvage their deficient requests.

**A.    Carroll's proposed modifications increase the burden on the Company**

As a preliminary matter, Brixmor is compelled to address Carroll's suggestion that the Company acted in bad faith by not referencing its negotiations with Carroll.  Carroll Opp. Br., at 15 ("Brixmor altogether fails to mention that counsel for Mr. Carroll made numerous efforts to alleviate the purported burden on Brixmor by narrowing Request 1.").  As Carroll well knows, at the very beginning of the discussions concerning the various Rule 17(c) subpoenas, the parties agreed that the negotiations surrounding the document requests would be treated as confidential, akin to settlement negotiations.  This confidentiality agreement would allow the parties to speak freely and make proposals, without the concern that its positions would later be used against

them.  This understanding allowed Brixmor and Carroll to reach agreements on Carroll's other subpoena requests, even though Brixmor believed that many of those requests were objectionable as well.  Brixmor ultimately agreed to produce voluminous documents in response to the other requests, constituting more than a hundred-thousand documents, including e-mails, calendar entries, certifications, notes, and other financial records.  Brixmor did not address its negotiations with either Carroll or Pappagallo in its opening brief because it chose to respect its agreement with the defendants, not for any other reason.  In any event, as Brixmor informed Carroll, his proposed compromise is just as objectionable as his original Request 1.

In attempting to work out a compromise concerning Carroll Request 1, Brixmor requested that Carroll provide a narrow set of search terms and date limitations.  After considerable discussion between the parties, on November 29, Carroll finally sent Brixmor a list of 191 search terms and 68 individuals for Brixmor to run in Carroll's e-mail account, asking Brixmor to provide the number of hits that resulted from each individual and search term.  Many of the search terms were extremely broad, with various extenders, and many of the individuals were not employees of Brixmor and did not appear to be relevant to the allegations in the indictment.  Carroll's proposal also did not limit the original five-year date range.  In addition, Carroll made clear that providing this information would not necessarily satisfy the request, nor would Carroll's request be confined to only the hits involving those individuals or search terms.

After reviewing Carroll's proposed searches, Brixmor concluded that the proposal would not meaningfully narrow the scope of Carroll Request 1.  Instead, running these searches would only increase the burden on Brixmor.  The Company would first need to engage in a lengthy, time-consuming search of Carroll's entire e-mail account, which would require 259 different searches.  After supplying the number of hits from those searches to Carroll, Brixmor would then

need to negotiate further as to which categories of documents should be produced, which searches would be modified further and re-run, and which searches might be abandoned. That might lead to yet another round of negotiations, and so on. Carroll also appears to acknowledge that his e-mail account will contain numerous privileged documents (the great bulk of which will have nothing to do with the matters on which he was indicted), which Brixmor would need to comb through in order to protect its privilege. Carroll Opp. Br., at 4, 15. Thus, Carroll's proposal would only serve to extend the process further and cause the Company to expend more time, resources, and money to complete. Carroll expects Brixmor to undertake this significant additional work in the service of a request that, as written, is not proper under Rule 17(c).

Finally, Carroll's opposition explains in no uncertain terms what was clear to the Company in negotiations: Carroll has no interest in meaningfully narrowing his request. Carroll now appears to be abandoning the unsatisfactory proposal that he made to Brixmor in favor of his original Request 1. As Carroll writes in his opposition, "Put simply: Mr. Carroll's emails are critical evidence that will support central defenses, and there is no realistic way to identify the most pertinent emails without collecting all of them." Carroll Opp. Br., at 11. Carroll's unwillingness to narrow the improper request is precisely why Brixmor moved to quash.

### B. Pappagallo's proposed modifications remain deficient under *Nixon*

Pappagallo's proposed solutions fare no better. Indeed, Pappagallo has not even suggested any modifications to Pappagallo Request 1, which seeks the entire contents of the e-mail accounts of Splain and Mortimer for more than sixteen months. As discussed above and in Brixmor's opening brief, Pappagallo Request 1 is a classic fishing expedition, seeking any and all documents without making any attempt to identify specific, relevant or admissible materials.

As for Pappagallo Request 2, rather than narrowly tailoring the request, Pappagallo continues to seek all communications that hit on eight broad accounting subjects from the e-mail accounts of numerous employees of Brixmor's accounting department, including Mortimer, Splain, Jeong (John) Chang, Ralph Lalli, Daniel Reilly, William Gribbin, John Mobley, Gregory Berger, and Terry Weiler. Pappagallo's proposal eliminated a single document custodian (Rachel Shopf), which would not seriously limit the number of responsive documents, given that multiple accounting personnel are frequently copied on the same e-mails.

As with Carroll, Pappagallo's proposals to "limit" the scope of Request 2 do nothing of the kind. For the most part, Pappagallo takes the general topics that are listed in Request 2 and proposes equally broad search terms. For example, "Lease settlement income (LSI)" is one such topic, and Pappagallo's proposed search terms are "lease settlement," "lease termination," and "LSI." Pappagallo Opp. Br., at 12–13. Similarly, "2617 account and related sub-accounts" is another topic in Request 2, and Pappagallo's proposed search term is "2617*." *Id.* at 12. Another topic concerns "unvouched or stale purchase orders that were recorded in account 2617," and the proposed search terms are "purchase orders," "POs," and "PO's." *Id.* at 8–9. The same is true of the broad search terms proposed for the other topics, such as common area maintenance ("CAM"), tenant credits, and security deposits. *Id.* at 9–11.

Not surprisingly, during the time period in question, Brixmor's accounting personnel would regularly exchange e-mail involving these topics which had nothing to do with the matters in the indictment. The Company's accounting department frequently utilized account 2617, which was a legitimate deferred income account in the general ledger, and would process hundreds of lease settlements and thousands of purchase orders. As a real estate entity, Brixmor repeatedly dealt with tenant credits, security deposits, and CAM. For these reasons, very few of

the e-mails that would be responsive to those broad searches would touch on the narrow non-GAAP accounting metric at issue in this case, same property NOI.

As a result, the proposed search terms, while frequently used by Brixmor employees in the ordinary course of business, will rarely address the operative issue in the instant case. As noted in its opening brief, Brixmor already searched for and likely produced the e-mails that involved the topics listed in Request 2 which also related to same property NOI. Pappagallo's desire to have the Company conduct additional searches for these accounting topics that are unbounded by any connection to same property NOI is exactly the type of unreasonable or oppressive requests that Rule 17(c) prohibits.

## CONCLUSION

For the reasons set forth above and in Brixmor's initial brief, the Court should quash Carroll Request 1, Pappagallo Request 1, and Pappagallo Request 2 in their entirety, as well as any modifications proposed by the defendants.

HOGAN LOVELLS US LLP

By: /s/ Robert B. Buehler
Robert B. Buehler
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3261
Fax: (212) 918-3100

Douglas A. Fellman

555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5714
Fax: (202) 637-5910

*(Pro Hac Vice Motion Pending)*

*Attorneys for non-party witness*
*Brixmor Property Group, Inc.*