## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 19-cr-545 (CM) |
| MICHAEL CARROLL and | ) | |
| MICHAEL PAPPAGALLO, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF MICHAEL PAPPAGALLO'S
## <u>MOTION TO DISMISS THE INDICTMENT</u>

Gregory W. Kehoe
Robert A. Horowitz
Daniel P. Filor
GREENBERG TRAURIG, LLP
200 Park Avenue
New York, NY 10116
Telephone: (212) 801-9200
Facsimile: (212) 801-6400

*Counsel for Michael V. Pappagallo*

**TABLE OF CONTENTS**

**Page**

I.      PRELIMINARY STATEMENT ..................................................................................... 1

II.     FACTUAL BACKGROUND ........................................................................................ 3

III.    THE INDICTMENT ..................................................................................................... 5

IV.     LEGAL STANDARD .................................................................................................... 7

V.      ARGUMENT ................................................................................................................ 8

        A.      All of the Indictment's Alleged Accounting Adjustments Are
              Quantitatively Immaterial. ................................................................................ 9

        B.      All of the Indictment's Alleged Accounting Adjustments Are Qualitatively
              Immaterial. ....................................................................................................... 11

VI.     CONCLUSION ............................................................................................................. 15

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*ECA & Local 134 v. JPMorgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)...............................................................................10, 15

*Hamling v. United States*,
    418 U.S. 87 (1974)...................................................................................................7

*I. Meyer Pincus & Associates, P.C. v. Oppenheimer & Co.*,
    936 F.2d 759 (2d Cir. 1991).....................................................................................4

*IBEW Local 58 v. Royal Bank of Scotland Grp., PLC*,
    783 F.3d 383 (2d Cir. 2015)................................................................................13, 14

*Kramer v. Time Warner, Inc.*,
    937 F.2d 767 (2d Cir. 1991).....................................................................................5

*In re Ply Gem Holdings, Inc. Sec. Litig.*,
    135 F. Supp. 3d 145 (S.D.N.Y. 2015).......................................................................11

*Rothman v. Gregor*,
    220 F.3d 81 (2d Cir. 2000).......................................................................................4

*Russell v. United States*,
    369 U.S. 749 (1962).................................................................................................7

*Santana v. Chaudri*,
    No. A-0782-10T3, 2012 WL 75084 (N.J. Super. Ct. App. Div. Jan. 11, 2012)....................11

*SEC v. Block*,
    No. 16-cv-7003 (LGS) (S.D.N.Y. Sept. 8, 2016) ...............................................4, 14

*TSC Indus., Inc. v. Northway, Inc.*,
    426 U.S. 438 (1976).................................................................................................8

*United States v. Aleynikov*,
    737 F. Supp. 2d 173 (S.D.N.Y. 2010).......................................................................7

*United States v. Block* (*Block I*),
    No. 16-CR-595 (JPO), 2017 WL 1608905 (S.D.N.Y. Apr. 28, 2017) .........................8, 13, 14

*United States v. Block* (*Block II*),
    No. 16-CR-595 (JPO), 2019 WL 1254762 (S.D.N.Y. Mar. 19, 2019)...............................14

*United States v. Pirro*,
    212 F.3d 86 (2d Cir. 2000).......................................................................................7

*United States v. Stavroulakis*,
    952 F.2d 686 (2d Cir. 1992).....................................................................................7

*White v. H&R Block, Inc.*,
    No. 02 CIV. 8965 (MBM), 2004 WL 1698628 (S.D.N.Y. July 28, 2004)...........................4, 5

**Statutes**

15 U.S.C. § 78ff ........................................................................................................5, 6

15 U.S.C. § 78j(b) .....................................................................................................5, 6

15 U.S.C. § 78m(a) .......................................................................................................6

18 U.S.C. § 2 .................................................................................................................6

**Other Authorities**

17 C.F.R. § 240.10b-5 ...............................................................................................5, 6

17 C.F.R. § 240.12b-20 ..................................................................................................6

17 C.F.R. § 240.13a-13 ..................................................................................................6

17 C.F.R. § 240.13a-14 ..................................................................................................6

17 C.F.R. § 244.100(b) ..................................................................................................6

Fed. R. Crim. P. 12(b) .................................................................................................1, 7

Fed. R. Evid. 201 .....................................................................................................5, 13

Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150 (Aug. 19, 1999) ....................2, 3, 8, 11, 12

Defendant Michael V. Pappagallo ("Mr. Pappagallo") respectfully submits this memorandum of law in support of his motion to dismiss the Indictment pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure.

## I.   PRELIMINARY STATEMENT

The United States Department of Justice (the "government") alleges that, over the course of nine quarters, Brixmor Property Group, Inc. ("Brixmor" or the "Company") materially misstated – both up and down – its quarterly same store net operating income ("SSNOI"), a financial measure that has no fixed definition under the Generally Accepted Accounting Principles ("GAAP").  For the reasons set forth below, the Indictment fails to state an offense against Mr. Pappagallo because the proposed adjustments to SSNOI are clearly immaterial as measured under long-standing principles of materiality.

The government's theory of materiality is unprecedented and symbolic of the classic observation that statistics can be manipulated to support any desired result.  Here, the government's manipulation grossly distorts the impact of the proposed adjustments to SSNOI in a misguided effort to transform immaterial financial adjustments into material ones.  Indeed, applying well-established standards, Brixmor's outside auditors concluded the proposed adjustments were immaterial. Therefore, Brixmor was not required to – nor did it – restate its prior financial statements or results of operations to reflect those adjustments.

According to the Indictment, the misstatements to Brixmor's quarterly SSNOI (which are accepted solely for purposes of this motion) are generally about 0.5% and never exceed 1.29% in terms of dollars and percentage growth.  Clearly, these alleged misstatements do not come close to the five percent threshold for quantitative materiality.  In manipulating these immaterial misstatements, the government proposes a new measure of materiality:  the percentage by which

the SSNOI percentage growth was allegedly misstated.  By applying this new "percentage of a percentage" measure, in the quarter with the largest alleged misstatement of SSNOI in terms of dollars (the fourth quarter of 2013), the government turns a 1.29% alleged adjustment in dollars (or a 1.1% adjustment in terms of percentage growth) into a supposed 39.3% misstatement.  This unprecedented measure of materiality, if applied, would entirely dismantle the long-standing guidelines of quantitative materiality by transforming clearly immaterial amounts into material ones, thereby eliminating the foundation of materiality on which accounting and auditing standards are based.

The alleged misstatements are also immaterial on a qualitative basis. In an attempt to manufacture "qualitative materiality," as defined by the SEC in its Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150 (Aug. 19, 1999) ("SAB 99"), the government alleges that Brixmor manipulated its quarterly SSNOI growth because its executives wanted to report quarterly SSNOI growth that fell within its public guidance.  But Brixmor did not provide *quarterly* SSNOI guidance.  So, the government instead posits another novel theory, related to SAB 99's qualitative materiality factors.  Specifically, the government alleges Brixmor was motivated to manipulate its quarterly SSNOI growth to keep each quarter within the range of its publicly issued *annual* SSNOI guidance, even though Brixmor's SSNOI growth percentage, even with the government's adjustments, came within 0.1% of its annual guidance.

As described in detail below, none of the other qualitative factors set forth in SAB 99 favor the government.  Mr. Pappagallo had no financial motive to manipulate Brixmor's quarterly SSNOI.  The Indictment does not allege that his compensation or bonus was impacted by SSNOI, nor is he alleged to have sold any Brixmor stock during his tenure at Brixmor.  Moreover, with or without the government's proposed adjustments, Brixmor had consistently positive SSNOI growth

in the nine quarters at issue. In reviewing these qualitative materiality factors in conjunction with the other SAB 99 factors, the charges in the Indictment cannot support a finding of qualitative materiality, necessitating dismissal of the Indictment.

## II.     FACTUAL BACKGROUND

Mr. Pappagallo is the former President and Chief Financial Officer of Brixmor – a publicly traded real estate investment trust ("REIT"). Indictment ¶ 1, 3.  The Company principally acquires, owns and operates shopping centers. *Id.* ¶ 9. As a public company, Brixmor reports its financial results on a quarterly and annual basis.  Its reports include its GAAP financial statements, which are audited annually by outside auditors.  During July 2013 through September 2015 (the "relevant period"), the Company's auditors concluded that Brixmor's financial statements were fairly presented in all *material* respects.  Each quarter, Mr. Pappagallo certified that the financial statements "fairly present in all *material* respects the financial condition, results of operations and cash flows of the [Company]" for the relevant period and "[do] not contain any untrue statement of a *material* fact or omit to state a *material* fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by [the] report." *Id.* ¶ 7 (emphasis added).

Brixmor's reports also contained supplemental disclosures that included dozens of GAAP and non-GAAP measures and statistics, including its most important valuation metrics, Funds from Operations ("FFO"), Adjusted Funds from Operations ("AFFO"), Net Operating Income ("NOI"), and Earnings Before Interest Taxes, Depreciation, and Amortization ("EBITDA").  *See*, *e.g.*, Declaration of Daniel P. Filor, dated December 20, 2019 ("Filor Decl.") Exhibit ("Exh.") A

(Brixmor Supplemental Disclosure, Dec. 3, 2013).[1]  Brixmor provided quarterly and annual guidance regarding FFO and AFFO, which are the non-GAAP measures analysts use to value REITS.  *See, e.g.*, Complaint, *SEC v. Block*, No. 16-cv-7003 (LGS) (S.D.N.Y. Sept. 8, 2016), ECF No. 1 (alleging that FFO and AFFO are "the most useful indicator[s] of [a] REIT's ongoing performance").

Among the dozens of non-GAAP measures and statistics Brixmor provided in its Supplemental Reports was SSNOI,[2] which represents the net operating profit of the "Same Property Pool," or the pool of properties owned by the REIT at the end of a given reporting period compared with the same reporting period in the prior year, *i.e.*, the "Comparison Period," for the entirety of both periods.  SSNOI therefore typically excludes, among other things, any net operating income attributable to properties that were acquired, constructed, or disposed of between the current reporting period and the Comparison Period.  Unlike GAAP measures, SSNOI lacks any standard definition or even any definitive methodology guidance from any governmental,

---

[1]  Brixmor's SEC filings, 10-Ks, 10-Qs, and Supplemental Disclosures form the basis of the Indictment, *see* ¶¶ 16, 17, and are therefore "well within the scope of this [C]ourt's review on a dismissal motion."  *White v. H&R Block, Inc.*, No. 02 CIV. 8965 (MBM), 2004 WL 1698628, at *2 (S.D.N.Y. July 28, 2004); *see also Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (the review of documents on a dismissal motion may encompass "any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference … and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit") (citations omitted); *I. Meyer Pincus & Associates, P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991) (the review may include a pertinent document where "the complaint contains only 'limited quotation' from that document").

[2]  It is useful to distinguish between SSNOI, annual SSNOI growth percentage and quarterly SSNOI growth percentage (which is the metric alleged by the Government to be misstated). The more valuable non-GAAP measure that can be reconciled with the GAAP Net Operating Income measure is total SSNOI in dollars.  Annual SSNOI growth percentage is less important, and is a derivative of total SSNOI in dollars (calculated by comparing one year's SSNOI in dollars to the prior year's), while quarterly SSNOI growth percentage is an even less important quarterly breakdown of SSNOI compared to the same quarter of the prior year. *See* Indictment ¶ 10.

regulatory, or industry body.  Instead, the calculation of SSNOI involves discretion and subjective judgments regarding, among other things, the categorization, inclusion, and representation of costs and revenues. As a result, SSNOI is calculated differently by the various REITs, as well as investors and market analysts. Brixmor highlighted this variability in each of its public filings during the relevant period.  *See*, *e.g.*, Filor Decl. Exh. B (Brixmor Form 10-Q, Dec. 3, 2013), at 43 ("Computation of Same Property NOI may differ in certain respects from the methodology utilized by other REITS and, therefore, may not be comparable to such other REITS.").

The Company's Audit Committee concluded Brixmor's quarterly SSNOI from the third quarter of 2013 through the third quarter of 2015 was misstated, but they and the Company's outside auditor concluded the misstatements were quantitatively and qualitatively immaterial.  *See* Filor Decl. Exh. C (Brixmor Form 8-K, Feb. 8, 2016).[3]  As a result, Brixmor's auditors opined that Brixmor's financial condition and results of operations as reported were presented fairly in all material respects and Brixmor therefore did not restate any of its financial results for the relevant period.

## III.    THE INDICTMENT

On July 30, 2019, the government filed a six-count Indictment, with each count premised on alleged material misstatements of Brixmor's quarterly SSNOI. The first count alleges that Mr. Pappagallo and others conspired to commit securities fraud in violation of the Securities Exchange Act of 1934 (the "Exchange Act") (codified at 15 U.S.C. §§ 78j(b), 78ff) and SEC Rule 10b-5 (codified at 17 C.F.R. § 240.10b-5). Indictment ¶¶ 36-38. Count Two alleges that Mr. Pappagallo

---

[3] On a motion to dismiss, this Court may consider a document outside the four corners of the indictment where the document "constitute[s] 'matters of which judicial notice may be taken under Fed. R. Evid. 201.'" *White*, 2004 WL 1698628, at *2 (quoting *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)).

and others committed securities fraud by engaging in a scheme to defraud by falsely reporting Brixmor's SSNOI growth percentage on a quarterly basis, in violation of 17 C.F.R. § 240.10b-5; 15 U.S.C. §§ 78j(b), 78ff; and 18 U.S.C § 2. *Id*. at ¶ 41. Counts Three and Four allege that Mr. Pappagallo and others made false statements in filings with the SEC regarding Brixmor's 10-Q filing for the third quarter of 2014 (Count Three) and the second quarter of 2015 (Count Four), in violation of 15 U.S.C. §§ 78m(a), 78ff; 17 C.F.R. §§ 240.12b-20, 240.13a-13, and 244.100(b). *Id*. at ¶ 43. Lastly, Counts Five and Six allege that Mr. Pappagallo and others filed certifications of disclosure with the SEC, in violation of 15 U.S.C. §§ 78m(a), 78ff, and in violation of Exchange Act Rule 13a-14, which requires each principal executive officer and each principal financial officer of a securities issuer to include certain certifications on, *inter alia*, quarterly reports filed on Form 10-Q and annual reports filed on Form 10-K. *Id.* at ¶ 45.

The government asserts that Mr. Pappagallo and others were manipulating accounting numbers in three areas, which impacted the Company's SSNOI. *Id.* at ¶ 21. In the Indictment, the government makes various "adjustments" to the SSNOI the Company reported during the period beginning the third quarter of 2013 and ending the third quarter of 2015.

The first area addressed by the Indictment is the Company's use of a standard deferred income account, labeled as "2617" at Brixmor. *Id.* at ¶¶ 22-28. The government alleges that Brixmor's accounting staff held (legitimate) income or liabilities in account 2617 that should have been recognized as income or liabilities until the income or liabilities were needed to achieve its SSNOI targets. *Id.*

The second area involves the Company's accounting for its lease settlement income ("LSI"), which is a lump sum payment received when a tenant prematurely terminates its lease. The Indictment alleges Brixmor included LSI in its calculation of SSNOI. *Id.* at ¶ 29.

The third area addressed by the Indictment is the Company's determination of the properties to be included in the property pool for purposes of calculating SSNOI.  *Id.* at ¶¶ 31-32. Specifically, the Indictment cites to one example of an internal discussion as to whether a particular property should or should not be included in the pool. *Id*. at ¶ 32.

## IV.     LEGAL STANDARD

Rule 12(b) of the Federal Rules of Criminal Procedure permits pre-trial motions on "any defense, objection, or request that the court can determine without a trial of the general issue."  On such a motion, "the facts alleged by the government must be taken as true" and courts may not test the sufficiency of the evidence.  *United States v. Aleynikov,* 737 F. Supp. 2d 173, 176 (S.D.N.Y. 2010).

As for the sufficiency of the allegations, "an indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States*, 418 U.S. 87, 117 (1974); *see also United States v. Pirro*, 212 F.3d 86, 91 (2d Cir. 2000) ("A criminal defendant is entitled to an indictment that states the essential elements of the charge against him.").  To the extent an offense "includes generic terms, it is not sufficient that the indictment shall charge the offense in the same generic terms as the definition." *United States v. Stavroulakis,* 952 F.2d 686, 693 (2d Cir. 1992).  Rather, "it must state the [specifics]" and "descend to particulars."  *Id.* (quoting *Russell v. United States,* 369 U.S. 749, 765 (1962)).  Such factual particulars are required so that the Court may evaluate whether the facts, if proven, constitute an offense.  "Dismissal is required where the conduct alleged in the indictment as a factual basis for the offense is not actually prohibited by the language of the statute." *Aleynikov,* 737 F. Supp. 2d at 176.

Turning to the Indictment here, to be liable under the securities laws, an alleged misstatement must be material.  That is, "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).

## V.    ARGUMENT

As detailed below, the Indictment must be dismissed because each count is premised on the allegation that Brixmor materially misstated its SSNOI during the relevant period. The government's allegations are insufficient to support these counts because the misstatements, if any, were immaterial.

This District has applied SAB 99 factors in assessing the materiality of non-GAAP metrics in criminal cases.  *See, e.g.*, *United States v. Block* (*Block I*), No. 16-CR-595 (JPO), 2017 WL 1608905, at *4 (S.D.N.Y. Apr. 28, 2017).  The key factor in determining quantitative materiality is whether the alleged misstatement exceeds five percent. SAB 99, 64 Fed. Reg. at 45151 n.2 (setting a quantitative floor of five percent for a misstatement or omission, which is defined as "a financial statement assertion that would not be in conformity with GAAP.").   In addition to considering quantitative materiality, courts consider whether a quantitatively immaterial misstatement may be material based on qualitative factors.   *Id.* at 45151-52.   Neither the quantitative *nor* qualitative standard for materiality is met here. Properly calculated, every single one of the supposed misstatements at issue in this case is well below the five percent threshold applicable to GAAP measurements, let alone the non-GAAP measurement at issue here.

### A. All of the Indictment's Alleged Accounting Adjustments Are Quantitatively Immaterial.

The disputed accounting entries are miniscule in the context of Brixmor's overall financial results.  But the government attempts to manufacture quantitative materiality by ignoring the immateriality of the alleged misstatements in dollars and the immateriality of the alleged misstatement in terms of percentage growth, and instead focuses on an entirely new measure of materiality: the percentage by which the percentage growth was allegedly misstated.  As illustrated in the chart below ("SSNOI Chart"), when examining the government's proposed "adjustments" in terms of dollars or percentages, none of the adjustments, to either the quarterly or annual SSNOI, even approach SAB 99's five percent threshold.

| | 3Q13 | 4Q13 | FY2013 | 1Q14 | 2Q14 | 3Q14 | 4Q14 | FY2014 | 1Q15 | 2Q15 | 3Q15 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Brixmor's Reported SSNOI (in dollars) | 192,964,000 | 193,999,000 | 766,684,000 | 195,638,000 | 198,535,000 | 200,465,000 | 201,578,000 | 795,968,000 | 215,876,000 | 218,060,000 | 219,554,000 |
| DOJ's "Adjusted SSNOI" (in dollars) | 193,879,327 | 191,501,653 | 764,151,632 | 195,133,831 | 197,302,079 | 198,994,560 | 200,609,145 | 791,791,615 | 215,433,661 | 217,984,444 | 218,173,546 |
| Dollar Adjustment as a percentage | 0.47% | -1.29% | -0.33% | -0.26% | -0.62% | -0.73% | -0.48% | -0.52% | -0.20% | -0.03% | -0.63% |
| Brixmor's Reported SSNOI Growth Percentage | 3.50% | 3.90% | 4.00% | 3.80% | 3.80% | 3.90% | 3.90% | 3.90% | 3.40% | 3.60% | 3.60% |
| DOJ's "Adjusted" SSNOI Growth Percentage | 4.30% | 2.80% | 3.80% | 3.80% | 3.50% | 2.60% | 4.80% | 3.70% | 3.30% | 4.20% | 3.50% |
| Alleged misstatement's effect on SSNOI Growth Percentage | 0.80% | 1.10% | 0.20% | 0.00% | 0.30% | 1.30% | 0.90% | 0.20% | 0.10% | 0.60% | 0.10% |
| Alleged misstatement reported as a "percentage of a percentage" | 18.60% | 39.30% | 5.30% | 0.00% | 8.60% | 50.00% | 18.80% | 5.40% | 3.00% | 14.30% | 2.90% |

In the Indictment, the government created a novel test for materiality.  For instance, the government alleges that in the fourth quarter of 2013, Brixmor overstated its SSNOI by approximately $2.4 million in dollars, or 1.29% in terms of growth, which is clearly immaterial. The government then looked at the impact of the alleged overstatement on the SSNOI growth percentage, but that's only 1.1%, also clearly immaterial.  In a miraculous sleight of hand, the government ultimately resorted to its new theory of materiality:  the percentage by which the SSNOI growth percentage was overstated.  By doing so, it has converted a supposed 1.29% overstatement of SSNOI and a 1.1% overstatement of the SSNOI growth percentage into an

alleged 39.3% overstatement.  Using this "percentage of a percentage" methodology to calculate quantitative materiality defies logic, as it disregards the actual dollar amounts at issue in SSNOI, which, as the Indictment alleges, is reported as an "absolute number" in dollars.  Indictment ¶ 10.

Using this new percentage of a percentage theory, the government could render almost any accounting discrepancy into one that could appear to be material.  For example, suppose a company with sales of $1,000,000 in year 1 and $1,020,000 in year 2 and reports that its sales increased 2 percent in year 2 over year 1.  If it were subsequently discovered that its sales in year 2 were in fact only $1,010,000 ($10,000 less than had been reported), sales would have been overstated by $10,000 and the increase over year 1 would be 1%, not 2%.  Using its tortured percentage of a percentage methodology, however, the government would calculate that the growth was overstated by 100% (instead of reporting 1% growth in Year 2, it incorrectly reported 2% growth).  As this example and the SSNOI Chart above make clear, the government's creative "math" grossly distorts the magnitude of the clearly immaterial misstatements.[4]

It is likely for this reason that there has apparently never been a criminal case in which the government has even *brought a claim*, much less prevailed, using the theory that a financial misstatement was quantitatively material on a "percentage of a percentage" basis.  In fact, in the two apparent instances in which a party argued that a "percentage of a percentage" methodology should be used to evaluate the quantitative difference between two figures, the courts rejected the methodology,  finding  that  "by  extrapolating  the  expert's  testimony  into  a  'percentage  of  a

---

[4] Viewing alleged financial misstatements in context is critical when analyzing materiality.  In *ECA & Local 134 v. JPMorgan Chase Co.*, the Second Circuit found that even $2 billion in alleged misstatements was immaterial, where the $2 billion at issue was viewed in the context of a $715 billion asset class. 553 F.3d 187, 204 (2d Cir. 2009). The *ECA* Court reasoned that "[a]lthough $2 billion in prepay transactions may sound staggering, the number must be placed in context-- reclassifying $2 billion […] does not alter [the defendant's] total assets of $715 billion." *Id.*

percentage,' plaintiffs' counsel distorted and greatly exaggerated [the difference between two figures]." *Santana v. Chaudri*, No. A-0782-10T3, 2012 WL 75084, at \*5 (N.J. Super. Ct. App. Div. Jan. 11, 2012); *see also In re Ply Gem Holdings, Inc. Sec. Litig.*, 135 F. Supp. 3d 145, 153 (S.D.N.Y. 2015) (rejecting an invitation to "consider the decline from 23.9% to 20.2% a '15% decline' — adopting relative rather than absolute percentage change."). This Court should likewise reject the government's use of a "percentage of a percentage" measure to artificially convert clearly immaterial (alleged) misstatements into material ones.

**B.   <u>All of the Indictment's Alleged Accounting Adjustments Are Qualitatively Immaterial.</u>**

The alleged misstatements are also qualitatively immaterial.  SAB 99 lists the following factors as useful in determining whether a financial statement is qualitatively material:

1.  Whether the misstatement arises from an item capable of precise measurement or whether it arises from an estimate and, if so, the degree of imprecision inherent in the estimate

2.  Whether the misstatement masks a change in earnings or other trends

3.  Whether the misstatement hides a failure to meet analysts' consensus expectations for the enterprise

4.  Whether the misstatement changes a loss into income or vice versa

5.  Whether the misstatement concerns a segment or other portion of the registrant's business that has been identified as playing a significant role in the registrant's operations or profitability

6.  Whether the misstatement affects the registrant's compliance with regulatory requirements

7.  Whether the misstatement affects the registrant's compliance with loan covenants or other contractual requirements

8.  Whether the misstatement has the effect of increasing management's compensation – for example, by satisfying requirements for the award of bonuses or other forms of incentive compensation

9.  Whether the misstatement involves concealment of an unlawful transaction.

11

*See* 64 Fed. Reg. 45150.

Under these factors, the alleged misstatements are qualitatively immaterial, and the government has not alleged otherwise.  The government cannot dispute that Brixmor generated consistently increasing quarterly SSNOI in the nine quarters at issue.  Even after the government's "adjustments," Brixmor's SSNOI numbers were consistently increasing. *See* Indictment ¶ 33.  Based on Brixmor's consistent positive performance (with or without the government's adjustments), most of the qualitative factors weigh heavily in Mr. Pappagallo's favor.

The only SAB 99 qualitative factor the government even attempts to address is the third: "whether the misstatement hides a failure to meet analysts' consensus expectations for the enterprise."  The government acknowledges that Brixmor "provides guidance with respect to [its] anticipated *annual* SS-NOI Growth performance results."  Indictment ¶ 16 (emphasis added).  The Indictment alleges Brixmor misstated its quarterly SSNOI income to smooth its *quarterly* SSNOI growth percentage.  However, the Indictment does not allege Brixmor provided *quarterly* SSNOI guidance or that analysts had a consensus expectation (or any expectations) regarding *quarterly* SSNOI growth.  In fact, Brixmor did not provide *quarterly* SSNOI guidance.  Stuck with these facts, the government posits a new theory:   Brixmor misstated its *quarterly* SSNOI growth to fit within its *annual* guidance range.  That conclusory allegation could make sense if there was evidence the Company misstated its quarterly SSNOI in an attempt to conceal that it was not going to achieve its annual guidance, but here Brixmor was on-track and, even with the government's adjustments, came within 0.1% of its annual guidance. Thus, the Indictment does not allege materiality under any of the qualitative factors listed in SAB 99.

Moreover, the SSNOI growth percentages reported by the Company do not even support the government's theory that Brixmor misstated its quarterly SSNOI each quarter to meet its

annual guidance.  *Id.* ¶ 33.  The Indictment references Brixmor's 2013 annual SSNOI guidance of 3.9 - 4.0%.  ¶ 16.  In the third quarter of 2013, Brixmor reported SSNOI growth of 3.5%, 0.4% below its annual guidance.

Even if there were a qualitative factor weighing against Mr. Pappagallo (there is not), courts do not assess qualitative factors in isolation.  The sum of qualitative factors is viewed in light of the quantitative immateriality of an alleged misstatement. See *IBEW Local 58 v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 391 (2d Cir. 2015) (where defendant failed to disclose "less than 4% of [defendant]'s total asset backed securities exposure," even an adequately pled qualitative factor did "not tip the scales" in favor of materiality).

Here, the alleged misstatements regarding SSNOI are insignificant with respect to the absolute value of SSNOI.  Brixmor's public filing documents demonstrate that SSNOI is but one metric within reports that contain many more important GAAP and non-GAAP financial measures and computations.  *See, e.g.*, Filor Decl. Exhs. A and B.  The Indictment does not and cannot allege that small differences in quarterly SSNOI or its "smoothness" was of any significance to investors, especially in light of the mountains of other financial data Brixmor disclosed that is unchallenged by the government.

Other than the case at bar, *Block I*, 2017 WL 1608905, is the only case of which we are aware to charge a defendant with securities violations based solely on non-GAAP financial metrics. The court in *Block I* found that defendant's misstatements were material for several reasons, none of which are present here.

First, the *Block I* court found the Indictment adequately alleged quantitative materiality, based on an approximately five percent overstatement of AFFO. *Id.* at *4.  Second, unlike the case at bar, the qualitative factors weighed in favor of a finding of materiality in *Block I*.  *Block I*

involved misstatements concerning AFFO, as opposed to quarterly SSNOI growth.  *Id.*  The SEC – the government entity responsible for creating and enforcing regulations in the securities industry – has written that AFFO, unlike quarterly SSNOI growth, is arguably the most critical non-GAAP metric analyzed in assessing a REIT's performance.  *See* Complaint, *SEC v. Block*, No. 16-cv-7003 (LGS) (FFO and AFFO are "the most useful indicator[s] of [a] REIT's ongoing performance").  The *Block I* court also emphasized that "executive compensation was tied in part to AFFO performance."  2017 WL 1608905, at *4.  In Mr. Pappagallo's case, there is no allegation that his compensation was in any way tied to quarterly SSNOI.  Additionally, the Block defendant fabricated numbers that, as the court later put it, ". . . did not tie to the company's books and records—that is, they did not correspond to any actual entries in the company's general ledger." *United States v. Block* (*Block II*), No. 16-CR-595 (JPO), 2019 WL 1254762, at *2 (S.D.N.Y. Mar. 19, 2019) (denying defendant's motion for a new trial).  While the government here may dispute the timing of entries in Brixmor's ledger, the DOJ makes no claim that Brixmor or its executives fabricated entries, *i.e.*, that the income and liabilities were not valid.

The absence of these and other qualitative factors in the Indictment further weighs against materiality. *See IBEW Local 58*, 783 F.3d at 391 (noting factors plaintiffs did not allege in holding that qualitative factors do not favor a finding of materiality). Here, for example, there are no allegations that the alleged misstatements were significant to the operations of Brixmor or any of its divisions, that Brixmor management stood to benefit financially from the purported misstatements, or that Brixmor's management expected a significant market reaction as a result of the alleged misstatements. *See ECA*, 553 F.3d at 198, 205 (significant market reaction does not support materiality unless management "expected" misstatements would cause such reaction).

## VI.     CONCLUSION

In sum, the government failed to allege materiality under any accepted methodology. Instead, it has resorted to novel theories that make little to no sense.  This is not enough to sustain the charges in the Indictment.  For the reasons set forth above, it is submitted that the Court should dismiss the Indictment in all respects.


Dated:  New York, New York
         December 20, 2019                          Respectfully submitted,
                                                    GREENBERG TRAURIG, LLP

                                                    By: *s/ Gregory W. Kehoe*

                                                    Gregory W. Kehoe
                                                    Daniel P. Filor
                                                    Robert A. Horowitz
                                                    200 Park Avenue
                                                    New York, NY 10166
                                                    Telephone: (212) 801-9200
                                                    Facsimile: (212) 801-6400

                                                    *Attorneys for Defendant Michael*
                                                    *Pappagallo*