**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     v.<br><br>MICHAEL CARROLL and,<br>MICHAEL PAPPAGALLO<br><br>               Defendants. | No. 19-cr-545 (CM)<br><br>December 20, 2019<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT MICHAEL PAPPAGALLO'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR A BILL OF PARTICULARS**

## TABLE OF CONTENTS

I.   BACKGROUND ................................................................................................ 1

II.  ARGUMENT .................................................................................................... 4

     A.   The Government Should Be Required to Identify the Accounting Entries It
         Contends Are Fraudulent .......................................................................... 5

     B.   The Government Should Be Required to Identify the Accounting Bases for
         Its Allegations that Particular Entries Were Fraudulent ........................... 9

     C.   The Accounting Workpapers Do Not Cure the Indictment's Lack of
         Specificity ............................................................................................... 12

CONCLUSION ......................................................................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*SEC v. Price Waterhouse*,
    797 F. Supp. 1217 (S.D.N.Y. 1992)................................................................10

*United States v. Bin Laden*,
    92 F. Supp. 2d 225 (S.D.N.Y. 2000)........................................................8, 12

*United States v. Bortnovsky*,
    820 F.2d 572 (2d Cir. 1987)................................................................4, 6, 9

*United States v. Connolly*,
    No. 16 Cr. 0370 (CM), 2017 WL 2537808 (S.D.N.Y. May 24, 2017)................6, 9

*United States v. Contorinis*,
    09 Cr. 1083 (RJS), 2010 U.S. Dist. LEXIS 74739 (S.D.N.Y. May 5, 2010) ..........7

*United States v. Kahale*,
    789 F. Supp. 2d 359 (E.D.N.Y. 2009) ................................................................7

*United States v. Luna*,
    No. 3:05cr58 (SRU), 2006 U.S. Dist. LEXIS 32474 (D. Conn. May 17, 2006) ................8, 12

*United States v. Mahaffy*,
    446 F. Supp. 2d 115 (E.D.N.Y. 2006) ................................................................14

*United States v. Nachamie*,
    91 F. Supp. 2d 565 (S.D.N.Y. 2000)........................................................6, 7, 9, 10

*United States v. Rajaratnam*,
    No. 09 Cr. 1184 (RJH), 2010 WL 2788168 (S.D.N.Y. July 13, 2010) ................6, 7

*United States v. Savin*,
    No. 00 Cr. 45 (RWS), 2001 WL 243533 (S.D.N.Y. Mar. 7, 2001)................5, 7, 9

*United States v. Strawberry*,
    892 F. Supp. 519 (S.D.N.Y. 1995) ................................................................12

*United States v. Vaid*,
    No. 16 Cr. 763 (LGS), 2017 WL 3891695 (S.D.N.Y. Sept. 5, 2017)................5, 9

*United States v. Wey*,
    No. 15 Cr. 611 (AJN), 2017 U.S. Dist. LEXIS 6991 (S.D.N.Y. Jan. 18, 2017)................8

**Statutes**

15 U.S.C. § 78ff ................................................................1

15 U.S.C. § 78j(b) ................................................................1

15 U.S.C. § 78m(a) ................................................................1

18 U.S.C. § 2 .................................................................................................................1

18 U.S.C. § 371 .............................................................................................................1

**Other Authorities**

17 C.F.R. § 240.10b-5 ...................................................................................................1

17 C.F.R. § 240.12b-20 .................................................................................................1

17 C.F.R. § 240.13a-13 .................................................................................................1

17 C.F.R. § 240.13a-14 .................................................................................................1

17 C.F.R. § 244.100(b) .................................................................................................1

Fed. R. Crim. P. 7(f) ..................................................................................................1, 4

Defendant Michael V. Pappagallo, by his counsel, respectfully submits this memorandum of law in support of his motion to compel the Department of Justice (the "government") to provide a bill of particulars pursuant to Federal Rule of Criminal Procedure ("Rule") 7(f), identifying the particular accounting items which the government alleges were fraudulent and accounting rationale. Without this information, the government's indictment is too vague, and the discovery too voluminous, to inform Mr. Pappagallo of the nature of the charges against him.

## I.     BACKGROUND

The government's indictment was unsealed on July 30, 2019, charging Defendants Michael Pappagallo and Michael Carroll with one count of conspiracy to commit securities fraud, in violation of Title 18 U.S.C. § 371; and five counts of securities fraud, making false statements in filings with the SEC, and false certifications of disclosure filed with the SEC, in violation of Title 15 U.S.C. §§ 78j(b), 78ff, and 78m(a); Title 17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-13-14, and 244.100(b); and Title 18 U.S.C. § 2.

The government claims that Brixmor materially misstated the percentage change in its same store net operating income ("SSNOI") figures between the current reported period and the same period during the prior year, over the course of nine quarters from 2013 to 2015. The Indictment alleges that Mr. Pappagallo and his co-defendant would direct the manipulation of figures underlying this measurement to both increase *and* decrease quarterly SSNOI growth. The Government refers to this as a "smoothing" scheme, intended to fraudulently convey to the investing public that Brixmor was accomplishing "steady and consistent performance" with respect to SSNOI. Indictment ¶ 14. It alleges three ways SSNOI was manipulated: the timing of recognition of revenue items from a particular Brixmor general ledger account ("account 2617"); inappropriate inclusion in SSNOI of some amount of lease termination or lease settlement income

("LSI"); and inclusion or exclusion of certain properties in the pool of Brixmor properties in calculating SSNOI. *Id.* ¶ 21. Virtually all the accounting adjustments resulting in the government's allegation of the "Actual SS-NOI Growth," as reflected in the government's chart in paragraph 33 of the Indictment, were to account 2617. But, except for a small amount in 2015 related to receipts for common area maintenance charges, *see id.* ¶ 25, the Indictment does not identify any of those accounting adjustments or the rationale for those adjustments.

Because the Indictment fails to identify this critical, yet basic, information, and because the voluminous document production from the government similarly fails to provide such information, Mr. Pappagallo has essentially been left in the dark in his efforts to understand the basic facts of the pending charges. Mr. Pappagallo cannot adequately prepare his defenses without this basic information. Accordingly, Mr. Pappagallo respectfully requests that the Court issue an order directing the government to provide limited information in the form of a Bill of Particulars that identifies which accounting entries were purportedly fraudulent and the facts upon which it relies to support its conclusion.

The government has produced nearly one hundred thousand documents in discovery related to its investigation of Brixmor.[1] Within the documents already produced, there are nine spreadsheets regarding SSNOI (the "summary spreadsheets"), as well as approximately 6,000 pages and 300 spreadsheets of associated workpapers from two different forensic accounting firms

---

[1] Most of the documents in the government's production were given to the government by Sullivan & Cromwell and Marks Paneth, who conducted an internal investigation and forensic audit, respectively, of Brixmor, at the behest of the Audit Committee of the Company's Board of Directors. The government's materials also consist of documents collected by the U.S. Securities and Exchange Commission ("SEC"), as part of their civil investigation into Brixmor. *See* Declaration of Daniel Filor, dated December 12, 2019 ("Filor Decl.") Exh. D (Sept. 27, 2019 letter from the government).

(Marks Paneth and Alvarez & Marsal), most of which contain numerous tabs, with each tab containing hundreds, if not thousands, of rows.

In referring to account 2167, the Indictment alleges the *aggregate impact* of the allegedly fraudulent adjustments, but it does not identify the individual adjustments involving account 2617. Instead, the Indictment cites several emails involving Mr. Pappagallo that may contain imperfect language, but which relate to indisputably inconsequential amounts in controversy and are completely unrelated to account 2617. At no point does the Indictment tie its allegations to the hundreds of spreadsheets that appear to cover Brixmor's accounting during the relevant period. As a result, Mr. Pappagallo has been left to comb through the tens of thousands of documents the government produced to try to identify the accounting matters at issue.

Accordingly, on August 23, 2019, Mr. Pappagallo wrote to the government seeking that it "[i]dentify each accounting adjustment and the reason for each such adjustment that caused the 'Reported SS- NOI' to differ from the 'Actual SS-NOI Growth' as set forth in Paragraph 33 of the Indictment (Q3 2013-Q3 2015)." Filor Decl. Exh. E (Email string, dated Sept. 27, 2019). In response, the government identified a bates-range of accounting work papers, and wrote that "all such entries are summarized in a single spreadsheet that has been produced to you at WB00452584" (the "Single Spreadsheet").  *See id.* The government has repeatedly advised that the voluminous discovery provided contains all the relevant information. It contends that the workpapers of Marks Paneth and Alvarez & Marsal include all the necessary accounting adjustment information. The work papers, however, fail to identify the accounting items alleged to be fraudulent and the accounting rationale which forms the basis for what the government contends is the more appropriate accounting treatment.

3

Therefore, on October 24, 2019, Mr. Pappagallo again requested that the government identify, "all actually made accounting entries alleged to be fraudulent or improper" and "the accounting bases why each of the allegedly fraudulent 'Reported SS-NOI Growth' numbers is different from the purportedly 'Actual SS-NOI Growth' numbers, *see*, *e.g.*, Indictment ¶ 33." Filor Decl. Exh. F at 4-5 (Pappagallo letter to SDNY, dated Oct. 24, 2019). The government has refused to provide the requested information.

The documents identified by the government do not solve the problem, for multiple reasons. *First*, the summary spreadsheets do not identify all the accounting entries at issue. Many numbers are simply presented in aggregate. Indeed, some of the specific examples alleged in the Indictment do not even appear to be reflected as items in the summary spreadsheets. *Second*, the summary spreadsheets also appear to be over-inclusive: They include, in nearly every quarter, accounting entries that the government could not possibly be alleging were fraudulent, but rather appear to be minor errors in computation or classification. But based on the way the government has presented the summary spreadsheets thus far, it is impossible to decipher what the government is alleging to be part of the illegal securities fraud, and which entries are inconsequential error. *Third*, with respect to any allegedly fraudulent accounting entries, the work papers fail to provide rationales for why the alternative accounting treatments proposed by the government are required.

## II.    ARGUMENT

A bill of particulars is warranted under Rule 7(f) of the Federal Rules of Criminal Procedure so that Mr. Pappagallo can identify with sufficient particularity the charge against him, prepare his defense, avoid surprise at trial, and, if prosecuted a second time for the same offense, interpose a plea of double jeopardy. *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987) (holding district court erred by failing to grant bill of particulars to identify fraudulent documents

in insurance fraud case and noting that production of over 4,000 documents did not negate need for bill of particulars because defense counsel was "left unguided as to which documents would be proven falsified"); *United States v. Savin*, No. 00 Cr. 45 (RWS), 2001 WL 243533, at *2 (S.D.N.Y. Mar. 7, 2001) (ordering government to provide bill of particulars where production of over 100,000 pages of material did not meet the government's obligation to provide notice of the means and methods of alleged conspiracy).

The Indictment here is a prime example of a deficient charging document:  It fails to provide sufficient information to allow Mr. Pappagallo to identify which accounting entries the government contends were unlawful. The government began its investigation well over three years ago.  It knows by now which accounting entries it believes were fraudulent.  The government should be directed to provide that information to Mr. Pappagallo to allow him to prepare his defenses.

The documents produced by the government do not obviate the need for a bill of particulars. The accounting workpapers and summary spreadsheets fail to identify the accounting entries at issue and are missing key information. They also fail to provide the accounting rationale for why the accounting adjustments made by the government in its Indictment to purportedly correct Brixmor's original accounting were appropriate or why Brixmor's accounting was supposedly fraudulent.

**A.      The Government Should Be Required to Identify the Accounting Entries It Contends Are Fraudulent**

Indictments charging fraud often warrant a bill of particulars.  "[O]therwise, in effect, 'the burden of proof impermissibly may shift' to the defendant to prove the documents or transactions are not fraudulent."  *United States v. Vaid*, No. 16 Cr. 763 (LGS), 2017 WL 3891695, at *11

(S.D.N.Y. Sept. 5, 2017) (quoting *Bortnovsky*, 820 F.2d at 575 ("In cases involving fraud, courts have required the Government to specify through a bill of particulars which document or transactions to prove are fraudulent if this information is not ascertainable.")).   Likewise, in transaction-based cases, courts frequently order the government to provide a bill of particulars identifying the specific transactions, entries, or decisions that it will contend were unlawful at trial. *See*, *e.g.*, *United States v. Connolly*, No. 16 Cr. 0370 (CM), 2017 WL 2537808, at *5 (S.D.N.Y. May 24, 2017) (directing government to "identify[] to the defense a finite universe of trades, from which it will . . . choose a still smaller number of trades [at trial] in order to explain the scheme to the jury"); *United States v. Nachamie*, 91 F. Supp. 2d 565, 575 (S.D.N.Y. 2000) (granting request for bill of particulars that identifies each document allegedly sent or received as part of conspiracy and for each document, "each item, statement or entry" in document that "is alleged to be false or fraudulent").

Accordingly, in complicated cases alleging fraud like this one where there are thousands of accounting decisions that the government might believe were fraudulent, a bill of particulars is warranted.   Courts have routinely ordered the government to produce bills of particulars when the necessary details of the fraud are not included in the indictment.   *See*, *e.g.*, *United States v. Rajaratnam*, No. 09 Cr. 1184 (RJH), 2010 WL 2788168, at *4-5 (S.D.N.Y. July 13, 2010) (requiring government to identify "all reporting periods that were the subject of inside information," "the substance of the information provided for any period," and "the date(s) on which it was conveyed," as well as "the target companies," "the identity of the tipper," and "which tipper provided which piece of information" for certain counts, even though the government had disclosed "the securities at issue in each count of the indictment," "the event to which each piece of inside information relates," and "the trades at issue in the substantive counts" because "the

production of this material does not necessarily obviate the need for a bill of particulars"); *United States v. Contorinis*, 09 Cr. 1083 (RJS), 2010 U.S. Dist. LEXIS 74739, at *2 (S.D.N.Y. May 5, 2010) (directing government to produce a "bill of particulars with respect to the material, non-public information allegedly disclosed in connection with [a specific] transaction").

A bill of particulars like that ordered in *Rajaratnam* is required here. Defending against the thousands of accounting entries discussed in the government's document productions requires knowing the details of the accounting entries at issue, including why the payment was made, when it was made, whether it was subject to any contingencies, whether any special circumstances applied to the payment that may have called for a specific accounting treatment. A bill of particulars is especially critical in fraud cases involving routine business transactions, because where "the acts which form the basis of the charges may outwardly appear to be legitimate business communications, there is a greater potential for confusion over what precisely the government intends to prove at trial." *United States v. Kahale*, 789 F. Supp. 2d 359, 373 (E.D.N.Y. 2009) (finding that defendants were entitled to a bill of particulars); *see also Savin*, 2001 WL 243533 at *3 (bill of particulars request granted where "indictment alleges that Savin pilfered his client's money through an unspecified series of 'intercompany transfers' without identifying the amounts, dates, means, corporate entities, or co-conspirators involved."); *Nachamie*, 91 F. Supp. 2d at 571-72 (bill of particulars request granted where, in Medicare fraud charges, government "has not yet informed the defendants which of these claims were false and in what way they were false"). As such, the government should be directed to identify which entries are at issue.

The enormous size of Brixmor's business and nature of calculating SSNOI exacerbates the need for a bill of particulars. At all relevant times, Brixmor had over $9 billion in assets and nearly 500 properties in its same-store pool for SSNOI. Brixmor's accounting department was comprised

of dozens of accountants and nearly a hundred accounting function personnel. At a high level of generality, SSNOI is calculated based on property revenue and operating expenses, and thus any accounting entries that affect a property's revenue or operating expenses (including, among others, rent, real estate taxes, maintenance fees, bad debts, and recoveries from other tenants) can potentially affect SSNOI.  Brixmor's accounting department, under the direction and management of Steven Splain, thus made tens of thousands of accounting decisions relevant to SSNOI, and many of these entries relate to charges or credits incurred long before Mr. Pappagallo even began to work for Brixmor.  Still other entries, such as common area maintenance recovery or real estate tax recovery, were projections based on assumed recovery rates.  The government's 95,000-document, 535,000-page production contains over 13,000 spreadsheets, many of which include references to thousands of different accounting decisions and discussions that may or may not be relevant to the government's allegations.  Yet the Indictment identifies fewer than a dozen instances of allegedly improper accounting entries.

Further, the government "does not fulfill its obligations merely by providing mountains of documents to defense counsel who were left unguided as to the nature of the charges pending." *United States v. Wey*, No. 15 Cr. 611 (AJN), 2017 U.S. Dist. LEXIS 6991, at *53 (S.D.N.Y. Jan. 18, 2017) (internal citations omitted); *United States v. Luna*, No. 3:05cr58 (SRU), 2006 U.S. Dist. LEXIS 32474, at *5 (D. Conn. May 17, 2006) ("overwhelming a defendant with discovery can obscure the particulars of a charge as fully as denying discovery."). This case, with its 535,000-page production is clearly one in which "the large volume of material disclosed is precisely what necessitates a bill of particulars." *United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000).

With only the Indictment and the discovery provided, Mr. Pappagallo cannot "identify with sufficient particularity" the thousands of accounting entries made each quarter that the government may contend were fraudulent.  "Fundamental fairness demands that, in a case of this nature, and with this volume of potentially relevant data, the Government identify a manageable subset within the universe of data that is actually relevant to the courtroom presentation of this case." *Connolly*, 2017 WL 2537808, at *5; *see also Bortnovsky*, 820 F.2d at 574 (ordering a bill of particulars when the government had produced "over 4,000 documents" during discovery but failed to disclose "the dates of the fake burglaries and the identity of the three fraudulent documents"); *Nachamie*, 91 F. Supp. 2d at 571 (ordering a bill of particulars where the government had produced "over 200,000 pieces of paper in hundreds of boxes" "relating to 2,000 Medicare claims" but had "not indicated which of those documents it intend[ed] to rely on to present its case-in-chief at trial").  Without a bill of particulars, Mr. Pappagallo "will be forced . . . to guess which of the numerous transactions documented therein" were allegedly fraudulent or improper.  *Savin*, 2001 WL 243533, at *3; *see also Vaid*, 2017 WL 3891695, at *11 (requiring a bill of particulars because "[g]iving Defendants data and documents for over 500,000 claims but not specifying which ones it will seek to prove at trial were fraudulent does not enable Defendants to prepare for trial or prevent surprise").

B.     **The Government Should Be Required to Identify the Accounting Bases for Its Allegations that Particular Entries Were Fraudulent**

It is also essential that the government provide the accounting rationale underlying its determinations that certain accounting items should have been treated the way the government now contends instead of how Brixmor did. It would be impossible for Mr. Pappagallo to dispute allegations of intentional fraud without first knowing why the government is alleging Brixmor's accounting treatment was wrong.  This need for not only the "what" of the allegations, but also the

"why" is particularly acute in the accounting context, where the items in dispute involve "complex issues of accounting as to which reasonable accountants could reach different conclusions." *SEC v. Price Waterhouse*, 797 F. Supp. 1217, 1241 (S.D.N.Y. 1992) (finding no fraud or recklessness on the part of the defendant accountants where court heard diametrically opposing views from accounting experts as to the reasonableness of the judgments made by defendants). If there is to be a fair trial, the government must outline the accounting bases on which they made their determinations of fraud. Absent such, Mr. Pappagallo will be unable to prepare any argument addressing the reasonableness of the government's proposed accounting treatment versus Brixmor's original accounting. *Nachamie*, 91 F. Supp. 2d at 571-72 (granting bill of particulars regarding Medicare fraud charges where government "has not yet informed the defendants which of these claims were false *and in what way they were false*") (emphasis added).

The two largest government adjustments are prime examples. From the documents the government produced, by far the largest alleged adjustment to account 2617 relates to a project initiated before Mr. Pappagallo even joined Brixmor.  Apparently, the project was to remove "unvouched" or "stale" purchase orders (the "POs") from Brixmor's general ledger.  The Indictment does not identify the adjustment but it is reflected in the actual vs. reported amounts in the chart in paragraph 33 of the Indictment (the "Chart"). This one outsized adjustment regarding the unvouched POs has effects on the SSNOI figures in the third and fourth quarters of 2013, as well as the third and further quarters of 2014 (because the quarterly SSNOI in those periods are compared back to the prior 2013 periods).  These unvouched POs apparently related to work orders dating as far back as 2003 that were recorded as payables in Brixmor's ledger but were not reversed when they were paid or the work was cancelled.

The accounting staff appears to have aggregated the POs (totaling $2,055,598) some time prior to July 2013, recorded them in account 2617 on July 1, 2013, and moved $1,293,266 of them out of account 2617 during the fourth quarter of 2013.  Without any explanation, based on the aggregated numbers in the Chart, the government seems to take the position that the full amount of the aggregated POs should have been booked as income in the third quarter of 2013.  While there is no allegation that Mr. Pappagallo had any knowledge of the PO project or the accounting related to it, there is also no allegation in the Indictment or the work papers indicating why the government's accounting for the POs is appropriate or Brixmor's was fraudulent. Filor Decl. Exh. G (Work papers bates no. BRX-AC_00004919). Without knowing the government's accounting justification for why the third quarter of 2013 is alleged to be proper accounting for the POs it is impossible to understand the government's allegation of fraud much less defend against it.

A similar problem exists for what appears to be a government allegation that Brixmor incorrectly accounted for "tenant credits" in 2013, which is the second largest adjustment by magnitude. While identification of this adjustment is also absent from the Indictment, the effect of the government's adjustment is observed in the numerical differences in the Chart. The work papers reference "tenant credits" in the third and fourth quarters of 2013 that appear to have removed by the government's accounting adjustments, but there is no indication regarding why the tenant credits were removed. Filor Decl. Exh. H (Work paper bates no. BRX-AC_00004925). An accounting rationale regarding the alleged proper accounting treatment is necessary to defend against the charge.

These are only two of the government adjustments, the accounting basis of which are inexplicable from the Indictment or work papers. Without identification of the allegedly fraudulent entries at issue and the accounting explanations for why they are fraudulent, accounting analyses

cannot be performed, expert reports cannot be written, *motions in limine* cannot be drafted, and requests to charge cannot be formulated. *See, e.g., Luna*, 2006 WL 1668006, at *2 (holding that "a bill of particulars is necessary to bring focus to the massive amounts of discovery produced and the […] conspiracy charged."). Simply put, if the government is not ordered to identify the fraudulent entries and why it contends they were fraudulent, Mr. Pappagallo will suffer undue prejudice that will hamper his constitutional right to a fair trial.

**C.      The Accounting Workpapers Do Not Cure the Indictment's Lack of Specificity**

The government maintains that a bill of particulars is not warranted here because it has produced workpapers from Marks Paneth and Alvarez & Marsal, two forensic accounting firms that analyzed Brixmor's accounting ledgers. These documents are not a substitute for a bill of particulars. *See Bin Laden*, 92 F. Supp. 2d at 233-34 ("in deciding whether a bill of particulars is needed, the court must determine whether the information sought has been provided elsewhere, such as in other items provided by discovery, responses made to requests for particulars, prior proceedings, and the indictment itself." (citing *United States v. Strawberry*, 892 F. Supp. 519, 526 (S.D.N.Y. 1995)).

The government has represented that the summary spreadsheets set forth the allegedly fraudulent entries. That cannot be true, as the spreadsheets do not even reference all of the entries alleged to be fraudulent in the Indictment. For example, the Indictment alleges that Brixmor manipulated SSNOI by illicitly storing certain income in account 2617 when it should have immediately recognized that income. *See* Ind. ¶¶ 22-28. The Indictment also alleges that "Brixmor received an $81,000 common area maintenance fee ('CAM') from a tenant ('Tenant-1'), which should have been immediately recognized as income and been incorporated into the calculation of

SS-NOI for that quarter." *Id.* ¶ 25.  However, nowhere in the summary spreadsheets is there a line entry for an $81,000 payment.

Additionally, Mr. Pappagallo is unable to determine whether the information missing from the summary spreadsheets is included in the backup workpapers.  The bates-ranges to which the government directed Mr. Pappagallo contain more than 6,000 pages and nearly 300 spreadsheets. Mr. Pappagallo cannot trace each entry in the summary spreadsheet back to the underlying accounting entries and analysis in the 6,000 pages of workpapers, as he would need to do to understand and evaluate the original accounting decisions.  Nor do these 6,000 pages and 300 spreadsheets indicate whether each entry in each spreadsheet is alleged to be fraudulent, or explain how each of those 300 spreadsheets in the backup workpapers is tied to the summary spreadsheets. The summary spreadsheets themselves include thousands of entries referencing accounting items that may have affected SSNOI, with no way of knowing whether the government alleges that each of those entries (or any of their specific, component entries) were fraudulent, or whether support for those entries is included in the workpapers.  Only a bill of particulars will allow Mr. Pappagallo to understand the transactions at issue.

Lastly, the Marks Paneth "summary" Single Spreadsheet the government offered is also substantially over-inclusive.  Filor Decl. Exh. I (Work paper bates no. WB00452584). It includes, in nearly every quarter, hundreds of accounting entries that the government could not possibly be alleging are fraudulent, but rather appear to be minor errors in computation or classification. Compounding the problem, the figures in the summary spreadsheets are composite amounts, made up of dozens, if not hundreds, of individual accounting decisions and entries.  "Perhaps the most frequent case in which particulars are warranted is where discovery is overwhelmingly extensive and the government fails to designate which documents it intends to introduce and which

documents are merely relevant to the defense." *United States v. Mahaffy*, 446 F. Supp. 2d 115, 119 (E.D.N.Y. 2006).

As it stands, the summary spreadsheets give no indication of which underlying accounting actions are alleged to be fraud, inconsequential error, or more likely, correct and grounded in generally accepted accounting principles. A bill of particulars is therefore necessary to clarify the specific items the government actually believes were the product of underlying fraudulent accounting and the accounting rationale of such allegations.

## **CONCLUSION**

For the foregoing reasons, Mr. Pappagallo respectfully requests an order directing the government to provide a bill of particulars.


Dated: New York, New York

December 20, 2019                           Respectfully submitted,

                                            GREENBERG TRAURIG, LLP


                                            By: *s/ Gregory W. Kehoe*

                                            Gregory W. Kehoe
                                            Daniel P. Filor
                                            Robert A. Horowitz
                                            200 Park Avenue
                                            New York, NY 10166
                                            Telephone: (212) 801-9200
                                            Facsimile: (212) 801-6400

                                            *Attorneys for Defendant Michael*
                                            *Pappagallo*

14