# Exhibit A



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 27, 2019

BY EMAIL

Anjan Sahni, Esq.
Peter G. Neiman, Esq.
William R. McLucas, Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
7 World Trade Center
New York, NY 10007

      Re:    United States v. Michael Carroll et al.,
               19 Cr. 545 (CM)

Dear Counsel:

      The Government writes in response to your letter dated August 27, 2019. In your letter, you make various formal requests for discovery. The Government hereby writes to respond to those requests. As an initial matter, the Government is fully aware of its constitutional and statutory discovery obligations, and intends to comply with such obligations.

### I.    Discovery Materials and Requests Discussed on August 13 and 23

      As discussed in prior calls, as part of its discovery obligations, the Government[1] has provided, and is continuing to provide, you with materials obtained from the U.S. Securities and Exchange Commission ("SEC"); Brixmor Property Group ("Brixmor"); workpapers from Marks Paneth and Alvarez & Marsal; Green Street; earnings calls and analyst reports; and accounting records from Ernst & Young and Deloitte. To date, the Government has produced all or nearly all of those documents within its possession. The Government may also rely on publically-available documents, such as SEC filings. Through these productions, we have satisfied our Rule 16 obligations with respect to this request.

      In your letter and on our calls, you have asked for details about how this material was collected. While we do not believe we are obligated to answer many or most of these questions, this letter provides a detailed account of the Government's understanding of these matters in order to provide you with the greatest assistance in preparing for trial. As discussed in prior calls, it is the Government's understanding that the majority of these materials, and specifically, the materials

---

[1] For purposes of this letter, the "Government" refers to the United States Attorney's Office for the Southern District of New York and the FBI and Postal Inspection Service Offices involved in this investigation; in other words, the groups that comprise the relevant "Prosecution Team." *See United States v. Barcelo*, 628 Fed. App'x 36, 38 ("Individuals who perform investigative duties or make strategic decisions about the prosecution of the case are considered members of the prosecution team, as are police officers and federal agents who submit to the direction of the prosecutor and participate in the investigation.") (citing *United States v. Meregildo*, 920 F.Supp.2d 434, 441 (S.D.N.Y. 2013)).

from Brixmor, were produced in response to a series of voluntary requests for documents to Brixmor from the SEC, and to a lesser extent from the Government.[2] The Government's understanding of the scope and nature of these requests are described for you in **Appendix A** to this letter.[3]

In response to your inquiries about metadata accompanying the production, we advise you that the Government's production to you included all metadata (*e.g.*, date, to, from, author, etc.) that was in the Government's possession. It is the Government's understanding that approximately 300 documents from Brixmor were redacted for privilege but that no privilege log was provided in connection with Brixmor's voluntary production of documents.

As noted earlier, the Government's production includes accounting records and materials prepared by external auditors (*i.e.*, Ernst & Young and Deloitte). These materials relate primarily to the auditors' work in connection with the review of financial information prepared and reported by Brixmor.

As discussed in prior calls, although the Government is under no obligation to review the files of the SEC (or other agencies which are not members of the prosecution team), the Government has committed to reviewing any interview notes taken by the SEC in connection with their investigation of Brixmor whether or not the Government was present. As we have advised you, however, we do not believe such notes exist where the Government was present.

### II.     Statements by Mr. Carroll

The Government's production includes statements made by Carroll in the commission of the alleged offenses as well as a summary of statements made by Carroll to representatives of Brixmor's audit committee in or about January 2016. Carroll's statements to the audit committee (as well as statements given by other alleged coconspirators to the audit committee) have been produced to you. The Government also hereby informs you that in or about February 2019, Carroll contacted Steven Splain on approximately two occasions and asked, in sum and substance, whether Splain had any information about the Government's investigation. The Government is unaware of any other statements that Carroll has made to the Government.

### III.    Documents and Objects

Please see the Government's response to item I, above. Additional discovery will be provided if and as it is available.

### IV.    Bill of Particulars

The Government does not believe that a bill of particulars is warranted in this case. The indictment in this matter is well-detailed and itself provides thorough information about the

---

[2] The SEC's formalized, written request to Brixmor for voluntary production has been provided to you in the Government's production bearing bates number SEC-NY-09436-SDNY-000001683.

[3] The Government's understanding of these requests comes in significant part from other sources and may not include all the precise details of the scope of SEC requests or Brixmor's efforts to respond, including the particular dates, custodians, and search terms employed by Brixmor.

specifics of the charges against the defendant.  With respect to your specific requests: (1) All accounting entries that the Government alleges to be fraudulent or improper are included in the workpapers of Marks Paneth (including Marks Paneth's comments on a transaction-by-transaction basis) and Alvarez & Marsal that have been produced to you in discovery at, among other places, WB00452585 to WB00453827 and WB00453828 through WB00459044, respectively; and all such entries are summarized in a single spreadsheet that has been produced to you at WB00452584. (2) To the extent that the defendant and others discussed making additional fraudulent or improper entries, those discussions constitute overt acts in furtherance of the charged conspiracy and the Government is under no obligation to identify overt acts or spell out its proof prior to trial.  *See United States v. Wey*, No. 15 Cr. 611 (AJN), 2017 WL 237651, at *20 (S.D.N.Y. Jan. 18, 2017) ("Wey's conspiracy-related demands—which seek, for example, a description of each alleged overt act committed in furtherance of the charged conspiracy—would essentially require[ ] the Government to lay out its proof . . . months before trial . . . That is a requirement that courts have consistently declined to impose.") (internal quotations omitted).

### V. Reports of Examinations and Tests

The Government is not presently intending to rely on the results of any examinations or tests.  Additional discovery will be provided if and as it is available.

### VI. Experts

Expert disclosures, if any, will be made prior to trial in accordance with a schedule to be agreed upon by the parties.

### VII. *Brady* Information

The Government is aware of its obligation to produce *Brady* material and is in the process of conducting a review of its file to identify and collect such information.  The Government intends to make such material available promptly upon discovery.

### VIII. Specific *Brady* Requests

1. Please see the Government's response to item VII, above.

2. The Government will produce any material that may tend to undermine or impeach the credibility of any Government witness prior to that witness's testimony.

3. The Government is not obligated to produce Grand Jury materials in the absence of the proper showing.  *See United States v. Ordaz-Gallardo*, 520 F. Supp. 2d 516, 519 (S.D.N.Y. 2007) ("To obtain disclosure of grand jury materials, a defendant must demonstrate a 'particularized need' for the materials.") (citing *United States v. Moten*, 582 F.2d 654, 662 (2d Cir. 1978)).

4. Please see the Government's response to item VIII.2, above.  In addition, the Government will review its files to determine if any such presentations, white papers, affidavits, reports, or other submissions exist and contain *Brady* information.

5. Please see the Government's response to item VIII.2 & 4, above.

6. Please see the Government's response to item I, above. In addition, aside from the Prosecution Team and the SEC, the Government is not presently aware of discoverable materials in the possession of any other governmental agency or tribunal. The Government is under no obligation to search for or obtain materials from entities outside the prosecution team. *See United States v. Meregildo*, 920 F. Supp. 2d 434, 441 (S.D.N.Y. 2013) ("[T]he prosecution team does not include federal agents, prosecutors, or parole officers who are not involved in the investigation.").

7. Please see the Government's response to item I, above. In addition, the Government is in the process of ensuring that that we have received, and produced to you, all documents from the SEC that the SEC received from third parties in connection with its investigation. As discussed, the Government is not obligated to search the investigative files of the SEC. Nevertheless, as discussed, if you believe the SEC files contain particular items that are material to your defense please let us know and we will make reasonable efforts to accommodate.

8. The Government is not obligated to produce the name of every individual contacted as part of its investigation. We are aware of our discovery obligations under *Brady*, Rule 16, and the Jencks Act and intend to comply with those obligations.

9. Please see the Government's response to item VIII.8, above.

10. Only two individuals from Brixmor have plead guilty. Information concerning their plea agreements will be disclosed prior to their testimony, if they are called as Government witnesses.

11. Please see the Government's response to item I, above.

12. Please see the Government's response to item I, above.

13. Please see the Government's response to item I, above.

14. The Government is not obligated to provide discovery materials from other cases.

### IX.    Production of § 3500 Material

The Government does not agree to produce Jencks Act material in the manner and schedule you suggest. The Government will produce such materials prior to the testimony of any Government witness and the parties can continue to discuss this issue as trial approaches. There is no basis upon which to insist on the production of these materials months before trial. *See United States v. Vilar*, No. 05 Cr. 621 (RJS), 2008 WL 2531195, at *4 (S.D.N.Y. June 22, 2008).

### X.    Other Requests

1. The Government is unaware of any evidence obtained through a search or seizure.

      2. The Government is unaware of any evidence obtained through the investigative techniques described.

      3. The Government is unaware of any evidence obtained through the investigative techniques described.

      4. The Government is unaware of the knowing destruction of any materials or the intention to do so.

      5. The Government is not required to answer questions regarding Grand Jury proceedings in the absence of the proper showing.

      6. The Government is not required to answer questions regarding Grand Jury proceedings in the absence of the proper showing.

      7. Please see the Government's response to item X.1 & 2, above.

***

As always, following our production of discovery in this matter, we remain available to discuss any specific questions you might have about any particular item of discovery, or to discuss any additional requests for material that you might have.

      Very truly yours,

      GEOFFREY S. BERMAN
      United States Attorney for the
      Southern District of New York

By:     /s/
      Daniel Tracer / Martin S. Bell
      Assistant United States Attorneys
      (212) 637-2329 / 2463

Appendix A

The Government hereby provides a chronology of Brixmor's productions to the best of the Government's present understanding.

In or about February 2016, the SEC requested documents from Brixmor related to SS-NOI and the 2617 account. This included documents from July 1, 2013 through February 19, 2016 from the following custodians: Michael Carroll, Michael Pappagallo, Steven Splain, Michael Mortimer, Ralph Lalli, Bill Gribbin, and John Chang. In or about March 2016, the SEC asked Brixmor to add the following three custodians to this request: Greg Berger, Kevin Brydzinski, and Samantha Strong. The search utilized the following five search terms (including certain variants): 2617 w/5 (recognize or unrecognize or income); noi w/5 (store or prop or SS); 2617; noi w/10 report; cookie jar. The SEC also requested: (1) documents related to Brixmor's internal compliance policies; (2) documents related to allegations by a whistleblower; (3) documents related to materiality; (4) documents related to compensation for the above-referenced individuals; and (5) investor calls or meetings where SS-NOI was discussed.

In or about March 2016, the SEC requested that Brixmor produce organizational charts from the relevant period. That same month, the SEC also requested that Brixmor produce (1) separation agreements with Carroll, Pappagallo, Splain, and Mortimer; and (2) documents that had been used by Brixmor in a February 29, 2016 presentation to the SEC.

In or about May 2016, the SEC requested that Brixmor produce (1) support for certain Brixmor general ledger entries, and (2) documents related to an adjustment to SS-NOI made on or about April 14, 2014 in spreadsheets exchanged with Pappagallo (*see, e.g.*, BRX-AC_00000286).

In or about November 2016, the SEC requested that Brixmor produce documents that Brixmor's audit committee had found relevant in its investigation. These materials were collected through a review of documents that were responsive to the following document searches: (1) all emails between Carroll and Pappagallo from July 1, 2014 through January 15, 2016; (2) all emails between Pappagallo and Splain from December 2014 through December 2015; (3) all emails between Pappagallo and Mortimer from December 2014 through December 2015; (4) all emails between Splain and Mortimer from December 2014 through December 2015; (5) all emails from custodians Carroll, Pappagallo, Splain, Mortimer, Chang, Gribbin, Lalli, LeClerc, and Burris from December 2014 through December 2015 that were responsive to the following fifteen search terms (including certain variants): 2617; cookie jar; earnings management; smooth earnings; manage earnings; earnings guidance; exec expectations; meet guidance; issue w/5 guidance; (meet or hit or manage) w/5 expect; (meet or hit or manage) w/5 (exec expect); (meet or hit or manage) w/5 (guidance project); (meet or hit or manage) w/5 (earning or income or revenue); noi w/s (same store); noi w/s report; and (6) all documents from custodians Carroll, Pappagallo, Splain, and Mortimer for the periods January 2013, June and July 2013, January 2014, April 2014, July 2014, and October 2014, that were responsive to the following three search terms (including certain variants): cookie jar; 2617 w/5 (recognize or unrecognize or other income); noi w/5 (same store or same prop or ss or report).

In or about December 2016, the SEC requested that Brixmor produce documents related to the calculation of SS-NOI and the exhibits from interviews conducted by the audit committee with Carroll, Pappagallo, Splain, and Mortimer.

In or about March 2017, the SEC made a number of additional requests of Brixmor: (1) The SEC requested that Brixmor produce documents related to lease settlement income ("LSI"). These documents included materials for the period July 2013 through December 2016 from the following custodians: Carroll, Pappagallo, Splain, Mortimer, Berger, Brydzinski, Strong, Lalli, Chang, and Gribbin. The search utilized the following five search terms (including certain variants): (LSI or settlement or termination) w/30 (other or reclass); (LSI or settlement or termination) w/30 (3099); (LSI or settlement or termination) w/30 (misc); (LSI or settlement or termination) w/30 (miscellaneous); (LSI or settlement or termination) w/30 (revenue). (2) The SEC requested that Brixmor produce correspondence with analysts. These documents included materials for the periods August through December 2013, February through March 2014, May through June 2014, August through September 2014, and November 2014 through February 2016, from the following custodians: Carroll, Pappagallo, Mortimer, Berger, Brydzinski, Strong, Lalli, Gribbin, Chang, Slater, and Lauren Tarola. The search first utilized the search term (including certain variants): noi w/5 (store or prop or ss or report); and then utilized additional search terms intended to capture Brixmor's analysts. (3) The SEC requested that Brixmor produce documents related to public statements related to SS-NOI. These documents included materials for the period July 2013 through December 2016 from the following custodians: Carroll, Pappagallo, Splain, Mortimer, Berger, Brydzinski, Strong, Lalli, Gribbin, Chang, and Slater. The search utilized search terms that were targeted to identify public statements related to SS-NOI. (4) The SEC requested that Brixmor produce all documents related to an adjustment to SS-NOI made on or about April 14, 2014 in spreadsheets exchanged with Pappagallo (*see, e.g.*, BRX-AC_00000286). (5) The SEC requested that Brixmor produce documents related to changes in LSI.

In or about April 2017, the SEC requested that Brixmor produce documents related to: (1) SS-NOI spreadsheets maintained by Berger; (2) documents reflecting the amortization of LSI in SS-NOI; and (3) documents related to the computation of NOI.

In or about June 2017, the SEC requested documents related to expense reimbursements in the fourth quarter of 2014.

In or about July 2017, the Government requested that Brixmor produce: (1) documents related to Marks Paneth's work in recalculating Brixmor's SS-NOI, and (2) the contents of a shared folder maintained by Berger.

In or about January 2018, the SEC requested that Brixmor produce documents related to adjustments to SS-NOI in the third quarter of 2015 based on a $300,000 fee paid in connection with Liberty Plaza and a $56,000 fee paid in connection with Round Tree. These documents included materials for the period January 2005 through October 2015, from the following custodians: Carroll, Pappagallo, Mortimer, Berger, and John Mobley. The search utilized search terms targeted toward the treatment of these fees.

In or about August 2018, the SEC requested that Brixmor produce additional documents related to Carroll, Pappagallo, Splain, and Mortimer.

In or about September 2018, the Government requested that Brixmor produce: (1) representation letters to auditors; (2) internal accounting policies related to the 2617 Account or revenue recognition; (3) and Brixmor's engagement letters with Ernst & Young and Deloitte.

In or about March 2019, the SEC requested that Brixmor produce documents related to remedial policies and procedures.

In or about August 2019, the Government requested that Brixmor produce all workpapers prepared by Marks Paneth and Alvarez & Marsal.