

Daniel Filor
Tel 212.801.6758
Fax 212.801.6400
filord@gtlaw.com

May 25, 2021

**VIA ECF**

The Honorable Colleen McMahon
United States District Court
    for the Southern District of New York
500 Pearl Street
New York, New York 10007

**Re:** *United States v. Michael Carroll, et al.*, **No. 19-cr-545 (CM)**

Dear Chief Judge McMahon:

    We write, on behalf of our client Michael Pappagallo, to respectfully request that the Court exercise its discretion to expunge the record of Mr. Pappagallo's arrest for reasons similar to those underlying the Court's order to expunge the arrest of his co-defendant Michael Carroll, dated May 24, 2021. This Court has ancillary jurisdiction to order expungement following dismissal of an indictment, *see Doe v. United States* 833 F.3d 192, 197 (2d Cir. 2016), if it finds that Mr. Pappagallo's privacy rights outweigh any law enforcement interest in maintaining the record of his arrest, *see, e.g.*, *United States v. Doe*, 935 F. Supp. 478, 480 (S.D.N.Y. 1996). That is the case here. We have shared a draft of this letter with the government in advance of filing, and the government has advised that it takes no position on the request.

    Mr. Pappagallo was the President and CFO of Brixmor, a real estate investment trust ("REIT"). The Indictment charged Mr. Pappagallo and others with securities fraud for allegedly "smoothing" a non-GAAP metric, same property net operating income ("SP-NOI") growth. Post-indictment, the defense discovered and presented to the government substantial evidence that the defense contended demonstrated Mr. Pappagallo's innocence. That evidence addressed all three theories of the Indictment: (i) the accounting adjustment that generated nearly all of the discrepancy in SP-NOI identified in the Indictment was part of a legitimate correction of old errors rather than any fraudulent scheme; (ii) with respect to lease settlement income ("LSI"), the amortized portion at issue had been disclosed to every analyst covering Brixmor, *see, e.g.*, Ex. A (WB00272863) at 2, and the auditors were provided with documents showing the inclusion of amortized LSI in SP-NOI that they opined was "appropriate[]," *see* Ex. B (Excerpt of EY-BRIX-EWP-000281 at tab "A03.1 – Same property NOI"); and (iii) all the allegedly fraudulent prior-

**Greenberg Traurig, LLP | Attorneys at Law**

MetLife Building | 200 Park Avenue | New York, New York 10166 | T +1 212.801.9200 | F +1 212.801.6400

Albany. Amsterdam. Atlanta. Austin. Berlin. Boston. Chicago. Dallas. Delaware. Denver. Fort Lauderdale. Houston. Las Vegas. London. Los Angeles. Mexico City. Miami. Milan. Minneapolis. New Jersey. New York. Northern Virginia. Orange County. Orlando. Philadelphia. Phoenix. Sacramento. Salt Lake City. San Francisco. Seoul. Shanghai. Silicon Valley. Tallahassee. Tampa. Tel Aviv. Tokyo. Warsaw. Washington, D.C. West Palm Beach. Westchester County.

Operates as: ˜Greenberg Traurig Germany, LLP; *A separate UK registered legal entity; ˆGreenberg Traurig, S.C.; ®Greenberg Traurig Santa Maria; ∞Greenberg Traurig LLP Foreign Legal Consultant Office; ^A branch of Greenberg Traurig, P.A., Florida, USA; ¤GT Tokyo Horitsu Jimusho and Greenberg Traurig Gaikokuhojimubegoshi Jimusho; ˘Greenberg Traurig Grzesiak sp.k.

www.gtlaw.com

May 25, 2021
Page 2

period adjustments were disclosed and highlighted for auditors who expressed no concerns, *see, e.g.*, Ex. C (excerpt of WB00743733 at tab "Same Prop"), the government's expert agreed that such adjustments may be appropriate, and of the roughly $606,000 in allegedly fraudulent prior period adjustments, $550,000 were required, *see* Ex. D (excerpt of WB00452584 at tab "NOI Adjustments Summary_All"). After the defense presented this evidence, the government "conducted extensive additional investigation, including discussions with cooperating witnesses, Brixmor employees, and forensic accountants." ECF No. 91. Following this investigation, the government concluded that it could not "establish quantitative materiality beyond a reasonable doubt" which "goes to an essential element of the charged offense" and that it was not "in the interest of justice to continue this prosecution." The government therefore sought leave of the Court to dismiss the Indictment, and moved to dismiss charges against two cooperating witnesses who had already pled guilty. *Id*.

Under Second Circuit law, the decision to grant a motion for expungement "lies within the equitable discretion of the court." *United States v. Schnitzer*, 567 F.2d 536, 539 (2d Cir. 1977). In considering such a motion, the court should consider that "an arrest record alone can create serious adverse consequences for those who have been arrested in the past, notwithstanding the ultimate disposition of the case," and assess the motion "individually on its merits to determine the proper balancing of the equities." *Id.* at 539-540. Courts in this Circuit have not hesitated to grant expungement where appropriate. *See, e.g.*, *United States v. Sahadeo*, No. 94-CR-3 (TPG), 2011 WL 5828339, at *2 (S.D.N.Y. Nov. 17, 2011) (granting request to expunge request record where case "ended … with a *nolle prosequi*").

Expungement is appropriate here. The government recognized in asking this Court to enter an order *nolle prosequi*, the facts simply did not warrant pursuing criminal charges against Mr. Pappagallo. That supports expungement because "[t]here is no legitimate public interest in maintaining a record" in these circumstances, since it "contains no information . . . likely to be useful in the future." *United States v. Van Wagner*, 746 F. Supp. 619, 622 (E.D. Va. 1990) (granting expungement following *nolle*). Further, the government was unaware of a portion of the evidence cited above when it decided to seek the Indictment in this case. It decided to move to dismiss the Indictment after the evidence was presented and after "extensive additional investigation." ECF No. 91. Mr. Pappagallo should not be saddled for life with an arrest record simply because that "extensive additional investigation" occurred after Indictment. *See Van Wagner,* 746 F. Supp. at 621 (expungement appropriately "remedies a . . . mistake" where government developed exculpatory evidence post arrest). Finally, Mr. Pappagallo will continue to suffer unwarranted "adverse consequences" from his arrest. He already lost his job at Brixmor after the audit committee's flawed five-week investigation, which failed to uncover the key exculpatory evidence highlighted above. Subsequently, as the result of his arrest, he and Fordham University mutually agreed that he should resign his teaching position there.

As the government ultimately determined, this prosecution was "not in the interest of justice." Mr. Pappagallo should not continue to carry the brand placed on him by the mistaken decision to arrest him.

May 25, 2021
Page 3

    We thank the Court for its consideration of this request.

    Respectfully submitted,

    Greenberg Traurig, LLP

    By: /s/ *Daniel P. Filor*

    Gregory Kehoe
    Robert Horowitz
    Daniel P. Filor
    200 Park Avenue
    New York, New York 10166
    *Attorneys for Michael Pappagallo*

Encls.